SCHMIDT *v.* MAPLES.

1. Brokers—Commissions—Conditional Lease—Nonfulfillment.
    In action for real estate broker's commission for negotiation of lease, defendant owner was not liable where lease, made and signed by defendant, was a conditional one, conditions were never fulfilled, and it has expired.

2. SAME—NATURE OF BUSINESS OF REAL ESTATE BROKER.

The business of a real estate broker is, in general, to find a purchaser and, in the absence of express stipulation otherwise, the generally recognized rule is that he has earned his commission when he finds and produces a party who is ready, able and willing to take the property and enter into a valid contract therefor upon the terms made by the principal.

3. SAME—COMMISSIONS—PROCURING CAUSE.

A real estate broker, in order to recover for commissions, must show that he was the procuring cause of the sale, that the purchaser learned of the property through him, and that through his efforts a sale or lease was made.

4. SAME—INTRODUCTION OF PROSPECT—PROCURING CAUSE.

Real estate broker's estate was not entitled, as a matter of law, to recover commissions for lease of real estate where lessee did not first learn of property through the late broker and he did not procure tenants who were ready, able and willing to lease upon the terms and conditions agreed upon and ceased negotiations over one and one-half years prior to time lease was actually entered into, which lease was made approximately eight months after his death.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 6, 1939. (Docket No. 85, Calendar No. 40,749.) Decided December 19, 1939. Rehearing denied February 14, 1940.

Assumpsit by Myrtle S. Schmidt, special administratrix of the estate of J. Harold Schmidt, deceased, against Catherine M. Maples for sums allegedly due as commissions for leasing of real estate by plaintiff's decedent. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Bloom & Bloom,* for plaintiff.

*Hulett & Coash,* for defendant.

POTTER, J.   July 11, 1938, plaintiff sued defendant and March 15, 1939, filed an amended declaration.

December 3, 1934, defendant executed to J. Harold

Schmidt, now deceased, an agreement authorizing him to find tenants who would lease her property, as follows:

"December 3, 1934.

"MR. J. HAROLD SCHMIDT,

"Detroit, Michigan.

"*Dear Sir:*

"You are hereby given the exclusive right, for a period of 90 days from the date hereof, to find tenants who will lease our property at the corner of Schaeffer and Michigan avenue in the city of Dearborn, Michigan.

"In the event you find tenants who will sign leases acceptable to us in every respect, and we are able to provide buildings for such tenants, we will pay you the regular Detroit real estate board commission upon completion of such deals.

"For the purpose of leasing, we value the property as follows:

"Cor. of Schaeffer and Michigan
50 x 100...............................$50,000
"The next 53 feet east of the corner...... 50,000
                    "Very truly yours,
                         "CATHERINE M. MAPLES.

"Extended J.

"GEORGE P. COASH.    Feb. 28–35."

And on the same date she signed another contract authorizing Schmidt to find a purchaser for premises belonging to her as follows:

"December 3, 1934.

"MR. J. HAROLD SCHMIDT,

"Detroit, Michigan.

"*Dear Sir:*

"You are hereby given the exclusive right to find a purchaser of the following premises for a period of 90 days from the date hereof:

"The southwest corner of Calhoun and Michigan avenue being a parcel of land 100 feet in depth and

131 feet in width fronting on Michigan avenue and 200 feet immediately south of the alley on Calhoun being a parcel 200 x 120 feet, for the sum of $106,000; terms, cash. The above premises to be sold in one entire parcel.

"In the event you find a purchaser, we agree to pay you a real estate commission of five per cent. of the purchase price.

"Very truly yours,
"Catherine M. Maples,

"Extended J.
"George P. Coash.   Feb. 28–35."

Plaintiff in her amended declaration alleges J. Harold Schmidt, deceased, during his lifetime found and produced a tenant to the defendant, viz.: Davidson Bros., Inc., operating as Federal Department Stores and Goodwins, Inc., Detroit, Michigan, which tenant was ready, able and willing to lease the property mentioned in said contracts on defendant's terms and which tenant was acceptable to defendant in every respect, and defendant accordingly entered into a formal lease in writing as landlord with the said tenant covering the property referred to in the contract, and that, notwithstanding the completion of the negotiations and the binding contract of lease, defendant wrongfully failed and refused to fulfill and perform the terms of the lease with her tenant without any fault upon the part of J. Harold Schmidt; and that thereupon defendant became liable to J. Harold Schmidt and his estate is entitled to receive the commission under such contract.

In the second count of plaintiff's amended declaration it is alleged J. Harold Schmidt during his lifetime found and produced a tenant to the defendant, viz.: Montgomery Ward & Company, an Illinois corporation, which was ready, able and willing to lease the property on defendant's terms and which was

acceptable to defendant in every respect, and in consequence thereof defendant entered into a lease with such tenant, of record in the register of deeds' office; that the estate of J. Harold Schmidt, deceased, earned and is entitled to receive the commission provided for in said contract.

Plaintiff also alleges defendant promised and agreed to reimburse J. Harold Schmidt for special services, expenses and losses incurred by him in the performance of his agency and undertaking by reason of the contracts of employment above mentioned, but that she has neglected and refused to pay the same.

In addition, plaintiff declares upon all the common counts in assumpsit.

Plaintiff filed a bill of particulars claiming commission under count one of the declaration of $10,000; under count two of the declaration of $7,022.16; under count three of the declaration of $5,000; and under the common counts of $10,000.

Defendant admits the execution of the agreements; alleges they were extended on February 28, 1935, for an additional 90 days; denies J. Harold Schmidt during his lifetime or at any time found or produced any tenant who was willing and able to lease or purchase the premises owned by defendant in accordance with such agreements; admits that during the lifetime of J. Harold Schmidt he attempted to procure Davidson Bros., Inc., who conducted business in Detroit under the name of Federal Department Stores, as a tenant, but that said procurement was based on certain contingencies, that the lease procured was held in escrow for a period of 60 days in accordance with its provisions to allow said J. Harold Schmidt to satisfy the demands of Davidson Bros., Inc.; alleges that July 24, 1935, the offer of Davidson Bros., Inc., expired; that

J. Harold Schmidt in his lifetime never completed any negotiations for lease of the premises; denies any binding contract was ever entered into by defendant and any tenant procured by the said J. Harold Schmidt; denies J. Harold Schmidt ever found or procured a tenant; denies he earned or was entitled to receive any commission whatsoever on any deal made with her during his lifetime; denies he ever made any demand or request upon defendant or her agents for the payment of any commission; and denies the estate of J. Harold Schmidt, deceased, is entitled to receive any commission whatsoever. She denies that during his lifetime, or during the lifetime of the extension of the contracts, J. Harold Schmidt found and procured Montgomery Ward & Company, an Illinois corporation, as a tenant which was able, ready and willing to lease the property. She admits that on or about October 29, 1936, she entered into a lease with Montgomery Ward & Company, but denies that J. Harold Schmidt during the life and extension of the contract procured such tenant or procured or obtained any offer of any kind or nature from Montgomery Ward & Company, which he submitted to defendant. She alleges that J. Harold Schmidt never at any time advised her of any offer of lease of said Montgomery Ward & Company. She alleges that all negotiations which resulted in the execution of the above mentioned lease were carried on with Montgomery Ward & Company, subsequent to the death of J. Harold Schmidt and long after the expiration of the contract made with him, by the firm of Webber & Sisson, real estate brokers, who were paid by defendant a commission for procuring such tenant long prior to the institution of this action.

At the conclusion of the testimony, the trial court reviewed the pleadings, the claims of the respective

parties, the testimony introduced, and directed a verdict for defendant.

Plaintiff appeals, claiming the court erred in directing a verdict for defendant because plaintiff's testimony made a *prima facie* case entitling her to recover the broker's commission on the lease executed between defendant and Montgomery Ward & Company; that plaintiff made a *prima facie* case entitling her to recover a commission for procuring Davidson Bros., Inc., as a tenant; the court erred in excluding testimony as to the special services rendered by J. Harold Schmidt, now deceased, at the request of defendant's agents; and that plaintiff made a *prima facie* case entitling her to recover upon the common counts in assumpsit for services rendered to defendant.

Two transactions are involved:

1. The agreement between defendant and Davidson Bros., Inc. There is no question that defendant executed a lease to Davidson Bros., Inc., and no doubt Schmidt was the procuring cause of this lease. But this lease was a conditional one. It was not to become effective except upon the happening of the following: (a) That on or before 60 days from the date thereof, May 23, 1935, lessors have in their possession a valid and binding mortgage commitment wherein the mortgagee agreed to loan the sum of $60,000 upon the land and the building to be erected upon the premises described in the lease, the mortgage to be a 10-year loan, at 6 per cent. interest, and 5 per cent. payable annually upon the principal; (b) that the lessors have in their possession a valid and binding agreement and completion bond executed by a building contractor, wherein the contractor agreed to construct a building costing not more than $60,000 and agreed to look to the company or individual who had executed the commitment for payment in accord-

ance with the building contract; and (c) that on or before 60 days from the date thereof, the lessors have in their possession a valid and binding lease or sale agreement executed between the lessors and the Detroit United Theatres, Inc., or any corporation of which George W. Trendle was an executive officer, wherein it was provided that a theater of not less than 1,400 seats was to be erected on or before ————, which theater was to have its entrance on Michigan avenue, approximately 80 feet east of the premises described in the lease. If within 60 days from the date thereof, the lessors did not present to Irwin I. Cohn, agent for Davidson Bros., Inc., the documents therein referred to, such lease and the agreement annexed thereto should become null and void and of no force and effect and all the parties thereto should be released from any and all liability of every kind and nature. The conditions of this lease were never fulfilled and it expired July 23, 1935. No liability upon the part of defendant can be predicated upon this lease.

2. The other question involved is, whether Schmidt was the procuring cause of the lease made by defendant with Montgomery Ward & Company. November 28, 1934, Schmidt wrote to Montgomery Ward & Company asking that it have its real estate officer get in touch with him regarding purchasing land for it and erecting buildings thereon for long lease to the company, in Detroit or other desirable cities.

December 3, 1934, the contracts were made by the defendant with Schmidt giving him exclusive right for a period of 90 days to find tenants who would lease property, and the right to find a purchaser as described therein.

February 13, 1935, Schmidt wrote a letter to Mr.

Ennis, of the real estate department of Montgomery Ward & Company, Chicago, saying:

"Owing to unavoidable delay I am only now in a position to answer.

"We are interested in building a 2-story and basement store for you 104' x 100'.

"I have informed your company repeatedly what rental we expect to receive.

"Your answer is always in the negative.

"Now I shall ask you to write me what gross rental and what percentage clause you will agree to.

"Referring to paragraph No. 2 your letter above mentioned there are only four corners in our immediate vicinity occupied respectively by Dearborn city hall, Manufacturers Bank, Kinsels Drug and our corner.

"The latter which is only corner available has a connecting parking space for 1,000 cars which requires some land area.

"If you can kindly direct me to 'similar property' at $500 a foot, I say to you now that I am in a position to buy it and build for you at a correspondingly reduced rental. I will put this in writing at any time you want it signed by a party worth millions.

"Maybe you forget at times that the Ford Motor Company with their new body plant and new steel plant is almost within walking distance of us, and 70,000 men working for them.

"You might also write to Kinsel Drugs, Sanders Candy and S. S. Kresge about this spot.

"It might also interest you to know that we own or control some 500,000 sq. ft. of land almost adjoining and that we are now figuring on a government insured loan for the financing of 1,000 to 2,000 apartment multiple dwelling on same."

February 15, 1936, Schmidt died, and October 29, 1936, a lease was made by Montgomery Ward & Company of defendant's property.

In the course of the correspondence with Montgomery Ward & Company and on December 26, 1934, Mr. John W. Arthur, of its real estate department, said:

"When in Dearborn last fall I talked with Mr. Maples and his mother regarding this property. Also a broker in Dearborn has written regarding the property proposing building a building. I am mentioning this to you so there will be no excuse for any complications between brokers and owners to arise if something of interest should be developed."

There is no proof Schmidt ever did anything toward leasing the property to Montgomery Ward & Company after his last letter.

"The business of a real estate broker is, in general, to find a purchaser and, in the absence of express stipulation otherwise, the generally recognized rule is that he has earned his commission when he finds and produces a party who is ready, able and willing to take. the property and enter into a valid contract therefor upon the terms made by the principal." *Beatty* v. *Goodrich,* 224 Mich. 538.

Plaintiff in this case does not contend Schmidt ever found a person who was ready, able and willing to make a lease of the premises upon the terms and conditions agreed upon, but contends rather that he was the procuring cause of the lease entered into between defendant and Montgomery Ward & Company. Plaintiff contends, *first,* that she is entitled to a commission upon this transaction because, as alleged in her declaration, Schmidt produced Montgomery Ward & Company, a customer, ready, able and willing to lease the property upon the terms agreed upon; and, *second,* though he did not procure such customer, he was the procuring cause of the

lease being entered into between defendant and
Montgomery Ward & Company and she is, therefore,
entitled to a commission.

In *Wood* v. *Smith,* 162 Mich. 334, the question of
when a real estate broker is the procuring cause of
a sale or lease was before the court and the meritori-
ous question was, whether or not plaintiff Wood was
the procuring cause of a sale by the defendant Smith
to one Mrs. Moore who became the purchaser of the
property. At the conclusion of the testimony, the
trial court summarized the charge to the jury as
follows (p. 341):

"In order to find for the plaintiff, you must find
that he was the procuring cause. It is necessary for
the plaintiff to show you, either that he introduced
Mrs. Moore to this property, or, in other words, he
was the first to call Mrs. Moore's attention to this
property; that Mrs. Moore was his customer, and
that he initiated the negotiations, and that by reason
of that negotiation and that introduction the nego-
tiations were acted upon; the introduction was acted
upon by Mrs. Moore and the negotiations were
brought by reason of that introduction as a procur-
ing cause to a successful and satisfactory conclusion
between Mrs. Moore and Mr. Smith. Or, he must
show you, if he did not introduce Mrs. Moore, that it
was through his active negotiations that final satisfac-
tory arrangement was reached between Mrs. Moore
and Mr. Smith. Now, by active negotiations is meant,
not a single introduction, not a single calling atten-
tion to, but carrying back and forth propositions, et
cetera, which would result in a conclusion satisfac-
tory to both parties. If he did not introduce Mrs.
Moore to this property, but Mrs. Moore's attention
had been called to the property before that, and was
not active in carrying back and forth propositions,
and in inducing Mrs. Moore to purchase this prop-
erty by such negotiations, then he cannot be said to

be the procuring cause. If it should appear to you that Mrs. Moore had been introduced to this property before Mr. Wood was known in the transaction, and had her attention called to it as a purchaser, and that incidentally Mr. Wood had called her attention to it; that she had authorized the proposition; he carried that proposition and that then the negotiations ended; and that afterwards Mrs. Moore, after the interval of a time Mrs. Moore went back and conducted her own negotiations for the purchase of the property—then Mr. Wood would not be the procuring cause.''

Error was assigned upon this part of the trial court's charge. Upon review, this court said:

''We find no error in the charge, but that it correctly states the law and is supported by our own decisions. The first proposition, that, in order to recover, the plaintiff must show that he was the procuring cause of the sale; that the purchaser learned of the property through him; and that through his efforts a sale was made—finds support in the cases of *Thuner* v. *Kanter,* 102 Mich. 59; *Douville* v. *Comstock,* 110 Mich. 693; *Brooks* v. *Leathers,* 112 Mich. 463; *Antisdel* v. *Canfield,* 119 Mich. 229.

''We cite in support of the charge the following cases: *Scribner* v. *Hazeltine,* 79 Mich. 370; *Hannan* v. *Fisher,* 82 Mich. 208; *Kelso* v. *Woodruff,* 88 Mich. 299; *Young* v. *Hubbard,* 154 Mich. 218; *Heenan* v. *Harris,* 157 Mich. 187.''

In this case, Schmidt was an active real estate man desiring to get business. Montgomery Ward & Company knew about the property before Schmidt had anything to do with it. He did not first call its attention to the property, he did not procure tenants who were ready, able and willing to lease upon the terms and conditions agreed upon, he ceased nego-

tiations with Montgomery Ward & Company more than one and one-half years prior to the time the lease was actually entered into, which lease was made approximately eight months after his death. We think the trial court correct in directing a verdict for the defendant.

Judgment affirmed, with costs.

BUTZEL, C. J., and WIEST, SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred. BUSHNELL, J., did not sit.