**Ronald HAZLETT, et al., Plaintiffs,**

v.

**Dr. Joseph EVANS, et al., Defendants.**

**Civil Action No. 96–254.**

United States District Court, E.D. Kentucky.

Nov. 8, 1996.

Jack Wilbur Richendollar, Catlettsburg, KY, for Ronald Hazlett, Sherri Hazlett.

Cheryl Ann Eifert, Ashland, KY, for Joseph Evans.

David Reid Dillon, Bailes, Craig & Yon, Huntington, WV, for Cabell Huntington Hosp.

Bernard Pafunda, Pafunda & Anderson, Pikeville, KY, for Leonard Cross.

## *MEMORANDUM OPINION & ORDER*

HOOD, District Judge.

This matter is before the Court on the motion of the defendant, Dr. Joseph Evans, to dismiss and the motion of the defendant, Cabell Huntington Hospital, Inc. ("C–H Hospital") to dismiss or, in the alternative, for summary judgment. The plaintiffs have responded, to which the defendants have replied. This matter is now ripe for decision. Having reviewed the record and the memoranda submitted by the parties, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Ariel Hazlett was born on November 30, 1992. According to the hospital records, in December 1992 the baby became ill and was taken to the emergency room at Our Lady of Way Hospital in Martin, Kentucky. The baby had developed a fever and demonstrated symptoms consistent with seizures. The baby was initially treated at Our Lady of Way Hospital, but was then transported to C–H Hospital via HealthNet for further care.

The defendant, Dr. Joseph Evans, treated the baby, upon her arrival at C–H Hospital. In rendering care to the baby, Dr. Evans ordered a CT scan of Ariel's head in order to try to determine what was causing the baby to seize. The CT scan results showed that the baby had a diffuse subarachnoid hemorrhage and the report noted that "on the basis of this examination alone, the possibility of Battered Child Syndrome cannot be excluded." Upon this finding, Dr. Evans noted that he was "obligated to pursue follow-up since could be 'Shaken Baby Synd[rome]'."

Having concluded that the brain injury was consistent with and possibly could be "Shaken Baby Syndrome", Dr. Evans reported Ariel's injury to social services in order for them to investigate the possibility that Ariel was an abused child. Upon investigating the matter further, social services removed the baby from her parents and Mr. Hazlett was charged with child abuse.

The plaintiffs allege that Dr. Evans wrongfully misdiagnosed Ariel with "Shaken Baby Syndrome" and that this misdiagnosis caused Ariel to be removed from their home, deprived of their care, companionship, and love, and caused her to be unnecessarily committed to the Department of Social Services, suffering mental pain and humiliation as a result. The plaintiffs, thus, have brought suit against Dr. Evans for his alleged negligence and against the hospital in its respondeat superior capacity.

Dr. Evans moves the Court to dismiss the complaint against him for two reasons: (1) the Court lacks personal jurisdiction over him and (2) he has immunity for the charges against him. The defendant argues that the plaintiffs cannot maintain an action against him in the Commonwealth of Kentucky because the Kentucky long-arm statute does not reach him and he does not have minimum contacts with the state. Moreover, Dr. Evans contends that even if the Court did have personal jurisdiction over him, he is statutorily immune from any civil or criminal liability and therefore the complaint fails to state a claim for which relief may be granted.

C–H Hospital argues that the complaint should be dismissed against it as Dr. Evans has immunity. C–H Hospital submits that the legislatures of both Kentucky and West Virginia have granted immunity to those who report suspected child abuse. Consequently, C–H Hospital argues that the action cannot be maintained against the hospital in its respondeat superior capacity if the action cannot be maintained against Dr. Evans.

Moreover, C–H Hospital submits that even if Dr. Evans did not have immunity, it is entitled to summary judgment. C–H Hospital argues that Dr. Evans never actually diagnosed the baby as having "Shaken Baby Syndrome"; Dr. Evans only stated that Ariel's brain injury could have resulted from "Shaken Baby Syndrome". Thus, since the doctor never actually diagnosed her, a claim of misdiagnosis cannot stand. Consequently, if no negligence claim can be made against the doctor, then the Hospital cannot be held vicariously liable for his alleged negligence and summary judgment should be granted.

The plaintiffs respond that both Kentucky's and West Virginia's immunity statutes require anyone reporting child abuse to

have "reasonable cause" to suspect that the child has been abused. The plaintiffs argue that Dr. Evans clearly did not have "reasonable cause" since Ariel's injuries were "the obvious result of birth trauma and that even a minimally trained pediatrician should have determined this." Moreover, the plaintiffs point out the criminal charges were dropped against Mr. Hazlett; thus, the plaintiffs argue that if the Commonwealth attorney "believed there to be 'no probable cause' in the criminal prosecution, then the issue becomes whether from a medical standpoint, the Defendants had 'reasonable cause' in the civil immunity statute context to render the diagnosis of shaken-baby syndrome. This, at the very least raises a jury question." The plaintiffs, thus, argue that this case cannot be dismissed, but must proceed on to the jury for a determination of whether Dr. Evans had "reasonable cause".

The defendants reply that the immunity statutes only turn on whether Dr. Evans had "good faith". The defendants note that the plaintiffs have not produced any evidence that Dr. Evans made the report in "bad faith"; consequently, Dr. Evans has immunity and the complaint should be dismissed as to both defendants.

## CONCLUSIONS OF LAW

### I. *Dr. Evans is Entitled to Qualified Immunity*

Since both Kentucky's and West Virginia's immunity statutes are based on the same language, this Court need not delve into a conflicts of law discussion. Under both Kentucky and West Virginia law, a doctor is *required* to report any possible child abuse when he has "reasonable cause" to believe or suspect such child abuse has occurred. *See* KRS § 620.030(1); W.Va.Code § 49-6A-2. If the doctor fails to report such suspected abuse, he is subject to a misdemeanor charge. *See* KRS § 620.990; W.Va.Code § 49-6A-8. Realizing the onerous burden placed upon the doctor and others who fall under the reporting provision, the legislature provided such persons with immunity, civilly and criminally, when the person acted "in good faith". *See* KRS § 620.050; W.Va.Code § 49-6A-6.

In the case at hand, Dr. Evans performed a series of tests on Ariel which included a CT scan. The CT scan showed the baby as having a subarachnoid hemorrhage. Dr. Evans noted that such injury is consistent with "Shaken Baby Syndrome". Thus, Dr. Evans was compelled, based on his reading of the CT scan, to inform social services of the possibility that Ariel was an abused child. Being that the injuries were consistent with "Shaken Baby Syndrome", the doctor certainly had "reasonable cause" to suspect and report Ariel's injury to the authorities.

■ The plaintiffs argue that "reasonable cause" is a fact question for the jury. The Court disagrees. The term "reasonable cause" is a standard of measurement. Just as probable cause is an evidentiary standard that the Court determines when a defendant raises Fourth Amendment search and seizure issues, so to is "reasonable cause"; such terms are not for the jury to decide. *See United States v. Goff,* 6 F.3d 363, 365–66 (6th Cir.1993); *see also United States v. Buchanon,* 72 F.3d 1217, 1222 (6th Cir.1995).

■ Whether Dr. Evans had "reasonable cause" to believe that Ariel was an abused child, however, is not the real issue here. The immunity statutes were designed to insulate doctors and other health professionals from actions exactly like this one. The immunity statutes are not predicated on "reasonable cause", but on "good faith". Because doctors are required to report for fear of criminal charges in failing to do so, it is reasonable to conclude that the legislature felt a responsibility to ensure that if doctors reported a suspected case of child abuse which ultimately turned out to be unfounded, they would not be held liable for their misdiagnosis unless it was done with bad intent.

Although Kentucky courts have not addressed this particular issue, several courts across the country have addressed whether a physician can be held liable for misdiagnosis of a child which resulted in a report of suspected child abuse. These courts have determined that the intent of the immunity statutes are to ensure that health care professional and others who work with children

will not be stifled and unwilling to report such abuse for fear of reprisal from upset and sometimes wrongly accused parents. *See D.L.C. v. Walsh,* 908 S.W.2d 791 (Mo.Ct. App.1995); *Maples v. Siddiqui,* 450 N.W.2d 529 (Iowa 1990); *Criswell v. Brentwood Hospital,* 49 Ohio App.3d 163, 551 N.E.2d 1315 (1989). As the Missouri Court of Appeals stated,

> Health care providers will be more likely to investigate and report incidents of suspected child molestation if they can be assured of protection under the laws of the state in which they are required to report.

> The relevant policy of Kansas is "to provide for the protection of children who have been abused by encouraging the reporting of suspected child abuse and by insuring the thorough and prompt investigation of such reports."

> Because all fifty states have reporting statutes that grant immunity, health care workers expect to be free from liability arising from the reporting and investigation of suspected child abuse.

*D.L.C.,* 908 S.W.2d at 795 (citations omitted). Thus, the legislatures have made a policy decision which weighs in favor of protecting the child at the risk of falsely accusing the parent. *See Criswell,* 49 Ohio App.3d at 164–65, 551 N.E.2d at 1317 (noting that "the Ohio Legislature made a policy decision that the 'societal benefits arising from encouraging the reporting and prosecution of child abuse by granting immunity outweigh any individual harm which might arise from the false reports' ").

To say that because a doctor did not have reasonable cause, and therefore is not immune from liability, because he misdiagnosed a child who had injuries that were consistent with child abuse, is to fly in the face of the whole purpose of these statutes. *See Maples,* 450 N.W.2d at 530 ("[W]hen the legislature undertakes to grant immunity from civil liability, we must assume that this is intended to apply to those situations where liability would otherwise exist because of some negligent act or other breach of legal duty."); *see*

*also Michaels v. Gordon,* 211 Ga.App. 470, 439 S.E.2d 722, 725 (1993) (holding that mere negligence on the part of the doctor is not bad faith and bad faith is what conquers immunity). Allowing doctors to be held civilly liable in a case such as this one would be to stifle doctors from reporting suspected cases and would lead to a double edged sword; on the one hand, the doctors would not want to report for fear of misdiagnosis, but on the other hand, if they did not report and their diagnosis was correct, then they would be faced with criminal liability. This Court believes that neither the legislature of Kentucky nor West Virginia intended to subject doctors to such results. This Court highlights the same reasoning applied by the Missouri Court of Appeals,

> If immunity did not apply to the negligent misdiagnosis of child abuse, health care providers would face a dilemma. By reporting suspected abuse, they would open themselves up to malpractice actions, but by declining to make a report, they could be guilty of a misdemeanor. This result cannot be what the Kansas legislature intended. "[T]he legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results."

*D.L.C.,* 908 S.W.2d at 799 (citations omitted). Thus, this Court finds that unless the plaintiffs can show that Dr. Evans had bad intent when he reported the suspected child abuse of Ariel to social services, Dr. Evans is afforded the immunity granted by the statute. *See Awkerman v. Tri–County Orthopedic Group,* 143 Mich.App. 722, 373 N.W.2d 204, 206 (1985).

Taking the plaintiffs' factual allegations as true, they have not demonstrated that Dr. Evans lacked "good faith", or in other words, had bad faith in reporting that Ariel's injuries were consistent with "Shaken Baby Syndrome" and thus was possibly an abused child. The plaintiffs have shown no ill will or bad intent on the part of Dr. Evans. Misdiagnosis is not evidence of bad intent; such misdiagnosis is only evidence of negligence. *See Michaels,* 439 S.E.2d at 725. Thus, having failed to show "bad faith" on the part of Dr. Evans in reporting the suspected abuse

of Ariel, Dr. Evans' motion to dismiss based on statutory immunity is well taken; the plaintiffs' complaint fails to state a claim for which relief can be granted.

## II. As C–H Hospital's Liability is Founded on Dr. Evans' Liability as its Agent, C–H Hospital is Entitled to Dismissal

█ The plaintiffs' complaint against C–H Hospital is based on its respondeat superior capacity. The plaintiffs argue that because Dr. Evans was an agent of C–H Hospital, C–H Hospital is liable to the plaintiffs if Dr. Evans is found liable. Because Dr. Evans cannot be held liable for his alleged negligence, it follows that the hospital cannot be held liable. *See Kiser v. Neumann Co. Contractors, Inc.*, 426 S.W.2d 935, 937–38 (Ky. 1967). Thus, C–H Hospital's motion to dismiss is well taken as the complaint fails to state a claim upon which relief can be granted.

Having found the argument of statutory immunity dispositive, the Court need not address the other issues raised by the defendants. Accordingly,

**IT IS ORDERED** that the motions to dismiss by the defendants, Dr. Evans and C–H Hospital, be, and the same hereby are, **GRANTED.**