T.C. Summary Opinion 2009-29


UNITED STATES TAX COURT


SHRI G. AND SUDHA AGARWAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12670-07S.                Filed March 2, 2009.


Shri G. and Sudha Agarwal, pro sese.

<u>Kris H. An</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Code in effect for the

years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $15,066 and $6,649 in petitioners' 2001 and 2002 Federal income taxes, respectively. Respondent also determined accuracy-related penalties under section 6662(a) of $3,013.20 and $1,329.80 for 2001 and 2002, respectively.

After concessions by the parties,[1] the issues remaining for decision are whether petitioners are: (1) Entitled to deduct on Schedule E, Supplemental Income and Loss, losses of $40,104 and $19,656 for 2001 and 2002, respectively, as qualifying taxpayers in real property trades or businesses; and (2) liable for the accuracy-related penalty for each year.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petition was filed, petitioners resided in California.

---

[1]In a "Stipulation of Settled Issues" the parties agree that: (1) Petitioners are entitled to a net capital loss of $856 (rather than $5,988.16) for 2001; (2) they are not entitled to a self-employed health insurance deduction of $2,332 for 2001; (3) they are not entitled to additional exemptions of $9,048 and $1,920 for 2001 and 2002, respectively; and (4) itemized deductions adjustments for 2001 and 2002 are computational.

During 2001 and 2002 Shri Agarwal (Mr. Agarwal) worked full time as an engineer. During 2001 and 2002 Sudha Agarwal (Mrs. Agarwal) worked full time as a real estate agent at "Century 21 Albert Foulad Realty" (brokerage firm).[2] During 2001 and 2002 Mrs. Agarwal was licensed as a real estate agent under California law; she was not a licensed as a broker.[3] She worked for a brokerage firm pursuant to an "Independent Contractor Agreement (Between Broker and Associate Licensee)". The contract provided that she was an independent contractor, not an employee of the brokerage firm. Consistent with Mrs. Agarwal's independent contractor status, the brokerage firm issued a Form 1099 to her for each year, and it did not pay her a salary; rather, she received commissions. The contract also required Mrs. Agarwal to sell, exchange, lease, or rent properties and solicit additional listings, clients, and customers diligently and with her best efforts.

During 2001 and 2002 petitioners owned two rental properties. Together they spent approximately 170 hours managing the "Wanda Property" and approximately 170 hours managing the "Mohave Property" during 2001 and 2002. They were the only persons who managed their rental properties. Mrs. Agarwal spent

---

[2]The brokerage firm is a licensed broker under California law. The brokerage firm is franchised by a broker, Albert Foulad.

[3]Mrs. Agarwal became a licensed broker in December 2007.

a total of 1,400 and 1,600 hours managing petitioners' rental properties and selling real estate in 2001 and 2002, respectively.

For 2001 Mrs. Agarwal reported commissions of $13,912 as gross receipts on Schedule C, Profit or Loss From Business. She also reported total expenses of $14,084 for a $172 loss with respect to her Schedule C real estate business.  For 2002 she reported commissions of $14,119 as gross receipts on Schedule C and total expenses of $13,401 for a profit of $718.

For 2001 petitioners reported total rents of $36,367 on Schedule E.  They also reported total expenses of $76,471.78 for a $40,104.78 loss (which they rounded down to $40,104).  For 2002 they reported total rents of $45,521 on Schedule E and total expenses of $65,177 for a $19,656 loss.

In the notice of deficiency issued to petitioners, respondent disallowed their Schedule E losses for each year because:  (1) Passive losses are allowed only to the extent that they qualify for the special allowance for rental real estate and the transitional phase-in rule; and (2) petitioners' losses were in excess of their passive income, the special allowance, and the phase-in rule.

## Discussion

### I.  Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden to prove that the determinations are in error.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  But the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue."  See sec. 7491(a)(1).  Petitioners have not alleged that section 7491(a) applies; however, the Court need not decide whether the burden shifted to respondent since there is no dispute as to any factual issue.  Accordingly, the case is decided by the application of law to the undisputed facts, and section 7491(a) is inapplicable.

### II.  Petitioners' Losses and Application of Section 469

Section 469(a) generally disallows any passive activity loss.  A passive activity loss is defined as the excess of the aggregate losses over the aggregate income from all passive activities.  Sec. 469(d)(1).  A passive activity is any trade or business or an activity engaged in for the production of income in which the taxpayer does not materially participate.  Sec. 469(c)(1), (6).  Material participation means that the taxpayer is involved in the activity's operations on a regular, continuous, and substantial basis.  Sec. 469(h); see also sec.

1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988) (an individual is treated as materially participating if the individual satisfies any one of the seven enumerated tests).

The general rule is that a rental activity is treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). But under section 469(c)(7), rental activities of a qualifying taxpayer in a real property trade or business are not a per se passive activity under section 469(c)(2). Kosonen v. Commissioner, T.C. Memo. 2000-107. Rather, the qualifying taxpayer's rental activities are treated as a trade or business--subject to the material participation requirements of section 469(c)(1). Fowler v. Commissioner, T.C. Memo. 2002-223; sec. 1.469-9(e)(1), Income Tax Regs. And in determining whether a taxpayer materially participates, the participation of the taxpayer's spouse is taken into account. Sec. 469(h)(5).

A taxpayer may qualify for the real property trade or business exception if: (1) More than one-half of the personal services performed in trades or businesses by the taxpayer during the taxable year are performed in real property trades or businesses in which the taxpayer materially participates; and (2) the taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which

the taxpayer materially participates.  Sec. 469(c)(7)(B)(i) and (ii).  In the case of a joint return, either spouse must satisfy both requirements.  Sec. 469(c)(7)(B).

Section 469(c)(7)(C) defines the term "real property trade or business" as "any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business." [Emphasis added.]

A.  The Parties' Arguments

Petitioners argue that real estate agents should be considered real estate professionals because real estate agents are engaged in a real property brokerage business in that real estate agents "bring together buyers and sellers".

In reply, respondent argues that Mrs. Agarwal was a licensed real estate agent, not a licensed real estate broker.  Thus, under California law, according to respondent, Mrs. Agarwal could not be engaged in a brokerage trade or business, and therefore, she was not engaged in a real property trade or business as defined by section 469(c)(7)(C).

B.  Brokerage Defined

The term "brokerage" is not defined in section 469, within the legislative history of section 469, or by any court decision. Thus, the Court turns to principles of statutory construction to determine its meaning.  See Baker v. Wash. Group Intl., Inc., No.

1:06-CV-1874 (M.D. Pa. Mar. 14, 2008); <u>Sierra Club v. Leavitt</u>, 355 F. Supp. 2d 544, 555 (D.D.C. 2005); <u>Weber v. Heitkamp (In re Hopson)</u>, 324 Bankr. 284, 287 (S.D. Tex. 2005).

"Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them." <u>Caminetti v. United States</u>, 242 U.S. 470, 485-486 (1917). In addition, a statutory term is construed "in its context and in light of the terms surrounding it." <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 9 (2004); see also <u>Jarecki v. G. D. Searle & Co.</u>, 367 U.S. 303, 307 (1961) ("a word is known by the company it keeps"). Legislatures are presumed to have intended that a statute's terms "'be given a reasonable construction'". <u>Hazlett v. Evans</u>, 943 F. Supp. 785, 788 (E.D. Ky. 1996) (quoting <u>D.L.C. v. Walsh</u>, 908 S.W.2d 791 (Mo. Ct. App. 1995)); see also <u>Beck v. N. Natural Gas Co.</u>, 170 F.3d 1018, 1024 (10th Cir. 1999); <u>In re Nofziger</u>, 925 F.2d 428, 435 (D.C. Cir. 1991).

A term's common or approved usage may be established by a dictionary. <u>Rousey v. Jacoway</u>, 544 U.S. 320 (2005); <u>Smith v. United States</u>, 508 U.S. 223, 228-229 (1993). Webster's Third New International Dictionary 282 (2002) defines the term "brokerage" as "the <u>business</u> of a broker" or "the fee or commission for transacting business as a broker." [Emphasis added.]

The Court concludes that Congress is presumed to have defined the term "brokerage" in its common or ordinary meaning. The Court further concludes that for purposes of section 469, the "business" of a real estate broker includes, but is not limited to: (1) Selling, exchanging, purchasing, renting, or leasing real property; (2) offering to do those activities; (3) negotiating the terms of a real estate contract; (4) listing of real property for sale, lease, or exchange; or (5) procuring prospective sellers, purchasers, lessors, or lessees. See Hooper v. California, 155 U.S. 648, 657 (1895); Lawrence Gas Co. v. Hawkeye Oil Co., 165 N.W. 445, 447 (Iowa 1917); Schmidt v. Maples, 289 N.W. 140, 143 (Mich. 1939); Commonwealth v. Jones & Robins, Inc., 41 S.E.2d 720, 727 (Va. 1947); In re Pipes, 748 A.2d 118, 121 (N.J. Super. Ct. App. Div. 2000); Commonwealth v. Fahnestock, 15 Pa. C. 598 (Pa. Quar. Sess. 1895); see also Ky. Rev. Stat. Ann. sec. 324.010(1) (LexisNexis 2007) (defining "Real estate brokerage"); Md. Code Ann. Bus. Occ. & Prof. sec. 17-101(l) (LexisNexis 2004 & Supp. 2008) (defining "Provide real estate brokerage services"); Wis. Stat. Ann. sec. 452.01(3e) (West 2006) (defining "Brokerage service").

### C. Application of the Definition to Mrs. Agarwal's Activities

As is relevant here, California law defines the term "real estate broker" as a person who does, or negotiates to do, any one of the enumerated activities for compensation. Cal. Bus. & Prof.

Code sec. 10131 (West 2008).  Similarly, California law also defines the term "real estate salesman" as a person who is employed by a broker and who does any one of the enumerated activities.  Cal. Bus. & Prof. Code sec. 10132 (West 2008).  But whether Mrs. Agarwal is characterized as a broker or a salesperson for State law purposes is irrelevant for Federal income tax purposes--the test is whether she was engaged in "brokerage" within the meaning of section 469, as defined supra.  Consistent with her real estate salesman's license and pursuant to her contract with the brokerage firm, Mrs. Agarwal was engaged in "brokerage"; i.e., she sold, exchanged, leased, or rented real property and solicited listings.  Therefore, Mrs. Agarwal was engaged in a "brokerage" trade or business within the meaning of section 469(c)(7)(C).

Because Mrs. Agarwal owned an interest in a rental property, performed more than one-half of her personal services in real property trades or businesses in which she materially participated, and performed more than 750 hours of services in real property trades or businesses in which she materially participated, she is a qualifying taxpayer.  See sec. 469(c)(7); sec. 1.469-9(b)(6), (c)(1), Income Tax Regs.  Because Mrs. Agarwal is a qualifying taxpayer and she materially participated

with respect to each property,[4] petitioners are entitled to deduct their 2001 and 2002 Schedule E losses.  See sec. 469(c)(7); sec. 1.469-9(e)(1), (3), (4) <u>Example (i)</u>, Income Tax Regs.; sec. 1.469-5T(a), Temporary Income Tax Regs., <u>supra</u> (defining material participation); see also <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223; <u>Shaw v. Commissioner</u>, T.C. Memo. 2002-35.

## III.  <u>Accuracy-Related Penalty</u>

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount.  Sec. 7491(c).  The Commissioner satisfies this burden of production by coming forward with sufficient evidence that indicates that it is appropriate to impose the penalty.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).  Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is

---

[4]If the taxpayer is a qualifying taxpayer, then each interest in rental real estate is treated as a separate activity unless the taxpayer elects to treat all interests in rental real estate as one activity.  Sec. 469(c)(7)(A); <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223.  And the determination of whether the qualifying taxpayer materially participated pursuant to sec. 469(c)(1) must be met with respect to each rental activity, unless the taxpayer elected to treat all of the taxpayer's rental activities as a single activity.  Sec. 469(c)(7)(A); <u>Fowler v. Commissioner</u>, <u>supra</u>; <u>Shaw v. Commissioner</u>, T.C. Memo. 2002-35; sec. 1.469-9(e)(1), (4) <u>Example (i)</u>, Income Tax Regs.

in error by supplying sufficient evidence of reasonable cause, substantial authority, or a similar provision.  Id.

In pertinent part, section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20 percent of the underpayment that is attributable to:  (1) Negligence or disregard of rules or regulations; or (2) a substantial understatement of income tax.[5]  Section 6662(c) defines the term "negligence" to include "any failure to make a reasonable attempt to comply with the provisions of this title," and the term "disregard" to include "any careless, reckless, or intentional disregard."  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the section 6662(a) penalty:  no penalty is imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause therefor and the taxpayer acted in good faith.  Section 1.6664-4(b)(1), Income Tax Regs., incorporates a facts and circumstances test to determine whether the taxpayer acted with reasonable cause and in good faith.  The most important factor is the extent of the taxpayer's effort to assess his

---

[5]Because the Court finds that petitioners were negligent or disregarded rules or regulations, the Court need not discuss whether there is a substantial understatement of income tax.  See sec. 6662(b); Fields v. Commissioner, T.C. Memo. 2008-207.

proper tax liability.  Id.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer." Id.

Because petitioners concede that they are not entitled to certain deductions, see supra note 1, the Court finds that respondent has met his burden of production and that petitioners were negligent.  Petitioners did not establish a defense for their noncompliance with the Code's requirements.  See sec. 6001 (requiring taxpayers to keep records sufficient to establish the amounts of the items required to be shown on their Federal income tax returns).  Respondent's determination is sustained.

To reflect the foregoing,

Decision will be entered under Rule 155.