Anthony MORGAN, Felicia Morgan, and Colton Morgan, a Minor Child, Appellants

v.

Gladys BIRD, Appellee

and

Anthony Morgan; Felicia Morgan; and Colton Morgan, a minor child, by and through his natural mother and next friend, Felicia Morgan, Appellants

v.

City of Williamsburg, Kentucky, by and through its Mayor, Roddy Harrison; Richard Foley, City Council Member, Official Capacity; Paul Estes, City Council Member, Official Capacity; Laurel West, City Council Member, Official Capacity; Chet Riley, City Council Member, Official Capacity; Joe Early, City Council Member, Official Capicity; Donnie Witt, City Council Member, Official Capacity; Wayne Bird, Individually; Wayne Bird, Official Capacity of Policeman, City of Williamsburg, Kentucky, Appellees.

Nos. 2007–CA–001630–MR, 2008–CA–000117–MR.

Court of Appeals of Kentucky.

May 29, 2009.

David O. Smith, Marcia A. Smith, Corbin, KY, for appellants.

Ron W. Reynolds, Williamsburg, KY, for appellee Gladys Bird.

Todd C. Myers, Jeffrey R. Soukup, Lexington, Kentucky, for appellees City of Williamsburg, Kentucky, by and through its Mayor, Roddy Harrison; Richard Foley, City Council Member, Official Capacity; Paul Estes, City Council Member, Official Capacity; Laurel West, City Council Member, Official Capacity; Chet Riley, City Council Member, Official Capacity; Joe Early, City Council Member, Official Capicity; Donnie Witt, City Council Member, Official Capacity; Wayne Bird, Individually; Wayne Bird, Official Capacity of Policeman, City of Williamsburg, Kentucky.

Before LAMBERT, MOORE, and VANMETER, Judges.

## OPINION

LAMBERT, Judge.

Anthony, Felicia, and Colton Morgan, a minor represented by Anthony and Felicia in their parental capacity, appeal the dismissal of their claims against Gladys Bird, the City of Williamsburg, Kentucky, the members of the Williamsburg City Council, and Officer Wayne Bird. After careful review, we affirm the judgment of the Whitley Circuit Court.

In the early afternoon of April 9, 2007, Gladys Bird was in her backyard in Williamsburg playing with her grandson. Her neighbors, Anthony and Felicia Morgan, live in a house directly behind Gladys. Their yards are contiguous and separated by a privacy fence that runs the length of their backyards.

Through cracks between the fence posts, Gladys observed that Anthony and Felicia were grilling food on a makeshift open-flame barbeque pit built from cinderblocks. She then observed Anthony and Felicia's two-year-old son, Colton, standing in the yard holding a Bud Light beer can to his mouth. To Gladys, it appeared that Colton was drinking from the beer can.

Gladys then witnessed a man exit the rear of the Morgan's house, exclaim "Where is my damn beer," pick up Colton, and spank him. After Colton and the man went back into the Morgan's house, Gladys spotted a frog near the fence and approached it to show her grandson. At this point, Felicia stepped onto her back porch and began cursing Gladys and screaming at her to stop "snooping and peaking" at them through the fence. Gladys asked Felicia to stop yelling at her, but she did not.

Gladys telephoned Officer Wayne Bird of the Williamsburg Police Department, her son, and informed him of her account of seeing Colton drinking a beer and of the verbal altercation with Felicia.[1] Officer Bird asked Gladys if she was sure that Colton had a beer can, and Gladys confirmed that she was. Officer Bird then

---

1. It is disputed whether Gladys initially called Officer Bird before the altercation with Felicia. For purposes of this appeal, we will assume she called after the altercation as alleged by the Morgans.

informed Gladys that based on her story, he would have to contact social services about Colton. Officer Bird immediately called the Cabinet for Health and Family Services (hereinafter "CHFS") and reported the incident.

Approximately forty minutes after Gladys' call to Officer Bird, Officer Bird drove up to the curb outside the Morgan's house. Officer Bird was followed immediately by Stephanie Bryant, the CHFS social worker who had been assigned to investigate Gladys' complaint about Colton.

Upon approaching the front door, Officer Bird requested that Felicia, Anthony, and their live-in friend, Eddie Romines, step outside for a few questions. Stephanie Bryant called Felicia away from the others and spoke with her outside. She explained that she had come to investigate a report that Colton had been drinking alcohol. Thereafter, Felicia took Stephanie into the house and showed her the kitchen. Stephanie examined the contents of the refrigerator, kitchen cabinets, and went on the back porch. Although Stephanie did not find any alcohol in the kitchen, she observed several beer bottles in the backyard, as well as one beer can near the fence.

Felicia and Stephanie then went upstairs, and Officer Bird followed them. They entered Felicia and Anthony's bedroom, where Stephanie noticed an empty pill bottle with a scratched-off label. Felicia said that the bottle contained ibuprofen and that her mother had given it to her to treat anxiety-induced headaches. When Anthony was asked about the pill bottle, however, he reported to Stephanie that the bottle belonged to Eddie and contained something he received from a friend. Beer cans were also found in the bedroom. At no time did Anthony or Felicia deny Officer Bird permission to enter the house or ask him to leave.

At some point during the investigation, Stephanie spoke with Eddie about drug use. During that conversation, Eddie admitted that he had smoked marijuana a few weeks prior. Sometime after this, Stephanie instructed Felicia to contact a family member. Felicia called her mother. Stephanie then instructed Felicia to obtain drug tests for herself, Anthony, and Eddie, and informed her that during the CHFS's continued investigation, Colton would stay with Felicia's mother. Stephanie and the Morgans then reviewed and signed a "prevention plan" discussing Colton's temporary care. The plan stated that Colton was to stay with Felicia's mother and that the Morgans and Eddie were to submit to drug tests that day. All through the discussion of Colton's placement, Officer Bird was outside.

Colton stayed at his grandmother's house from April 9, 2007, to April 12, 2007. The Morgans and Eddie passed the April 9 drug test, but Stephanie then requested a second test, fearing that the results were falsified since Eddie had admitted to drug use. After passing the second test and agreeing to a child "aftercare plan," Felicia and Anthony regained sole custody of Colton.

Felicia and Anthony then brought suit against Gladys, Stephanie, Officer Bird, the CHFS, and the City of Williamsburg, by and through its Mayor and City Council members. They claimed that these parties "removed [their] child from their home based on a false, unsubstantiated report, in conspiracy with one another ... for an ulterior motive." They alleged that these actions violated their parental, civil, and constitutional rights; slandered and libeled them; intentionally inflicted emotional distress; threatened bodily harm and court action; wrongfully searched their home; instituted false, malicious, and wrongful administrative proceedings, a malicious

prosecution, and an abuse of process; wrongfully removed a child without court approval; and committed the tort of outrage.

The Whitley Circuit Court granted Gladys' motion to dismiss on July 2, 2007, based on her claim of immunity under Kentucky Revised Statutes (KRS) 620.030(1). The court subsequently granted a motion for summary judgment by the City of Williamsburg, the members of the Williamsburg City Council, and Officer Wayne Bird on December 21, 2007. Anthony and Felicia now bring this consolidated appeal.

■ The Morgans first argue that the trial court's granting of the motion to dismiss should be reversed on procedural grounds. They specifically contend that Bird's filing of a Kentucky Rules of Civil Procedure (CR) 12.02 motion to dismiss without filing an answer was procedurally defective and that she should have filed an answer asserting immunity under KRS 620.030, and then moved for summary judgment or a judgment on the pleadings under CR 12.03. Gladys responds by arguing that, because the Morgans have provided no proof of bad faith, they have failed to state a claim for which relief may be granted; thus, the claim was properly dismissed.

■ It is well established that a court should not dismiss an action for failure to state a claim unless the pleading party appears not to be entitled to relief under any set of facts which could be proven in support of his claim. *Weller v. McCauley*, 383 S.W.2d 356 (Ky.1964). In ruling on a motion to dismiss, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. *Mims v. Western–Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky.App. 2007). Therefore, "the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 884 (Ky.App.2002). Accordingly, the trial court's decision will be reviewed *de novo*. *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky.2000).

KRS 620.030(1) states that:

[a]ny person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to a local law enforcement agency.... Any supervisor who receives from an employee a report of suspected dependency, neglect, or abuse shall promptly make a report to the proper authorities for investigation .... Nothing in this section shall relieve individuals of their obligations to report.

Furthermore, KRS 620.050(1) specifies that "[a]nyone acting upon reasonable cause in the making of a report or acting under KRS 620.030 to 620.050 *in good faith* shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." (Emphasis added).

The [Morgans] argue that "reasonable cause" is a fact question for the jury. The Court disagrees. The term "reasonable cause" is a standard of measurement. Just as probable cause is an evidentiary standard that the Court determines when a defendant raises Fourth Amendment search and seizure issues, so to is "reasonable cause;" such terms are not for the jury to decide.

*See Hazlett v. Evans*, 943 F.Supp. 785, 787 (E.D.Ky.1996), citing *United States v. Goff*, 6 F.3d 363, 365–66 (6th Cir.1993); *see also United States v. Buchanon*, 72 F.3d 1217, 1222 (6th Cir.1995). The real issue in the instant case, however, is whether Gladys acted in bad faith as alleged by the Morgans. Unless the Morgans can show that Gladys had bad intent when she reported the suspected child neglect to the

police, Gladys is afforded the immunity granted by the statute and is entitled to dismissal under CR 12.02 for failure to state a claim for which relief can be granted. *See Hazlett*, 943 F.Supp. at 788, citing *Awkerman v. Tri–County Orthopedic Group*, 143 Mich.App. 722, 373 N.W.2d 204, 206 (1985).

Therefore, taking the Morgans' factual allegations as true, they have not demonstrated that Gladys acted in bad faith in reporting the suspected child neglect. The only factual allegation for the basis of the bad faith claim is the single disagreement the day of the report. There was admittedly no history of disagreement between the parties and no harbored malice. According to all parties, this was a one time disagreement over "snooping." This one disagreement simply does not suggest a level of malice or bad intent required to prove Gladys acted in bad faith. Nor is there any proof that Gladys "knowingly" lied about her claim that Colton was drinking a beer. Absent bad faith, Gladys is entitled to immunity under KRS 620.030(1). Therefore, we affirm the trial court's dismissal of the claims against Gladys for failure to state a claim for which relief can be granted.

■ The Morgans also argue that Gladys is not entitled to immunity under KRS 620.030(1), as she did not report the alleged abuse to the Cabinet herself but instead reported it to her son. KRS 620.030(1) states that:

[a]ny person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to *a local law enforcement agency* .... Any supervisor who receives from an employee a report of suspected dependency, neglect, or abuse shall promptly make a report to the proper authorities for investigation ....

Nothing in this section shall relieve individuals of their obligations to report.

(Emphasis added). Gladys did report the suspected neglect to her local law enforcement agency. It matters not that the officer she spoke with was her son. He was a member of her local law enforcement agency. Therefore, she is entitled to immunity under KRS 620.030(1).

■ The Morgans next assert that the trial court erred in granting summary judgment in favor of the City of Williamsburg, Kentucky, the members of the Williamsburg City Council, and Officer Bird. They specifically contend that Officer Bird acted in bad faith by not investigating the alleged bad faith report of neglect by Gladys before reporting it to CHFS and that the City and its Council members were negligent in supervising and training Officer Bird.

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); CR 56.03. We are mindful that "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Sevr. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

Having already determined that there is no proof of bad faith by Gladys, we find that Officer Bird properly followed the guidelines outlined in KRS 620.030 for reporting a claim of neglect to CHFS. In light of finding no bad faith by Officer Bird, it follows that the claims against the City and its Council members based on failure to properly supervise and/or train Officer Bird were also properly dismissed.

■ The Morgans have also alleged that Officer Bird illegally searched their home. The alleged search was nothing more than Officer Bird's following the CHFS worker through the home as she conducted her investigation, and the Morgans never objected to Officer Bird entering their home. No property was seized, and Officer Bird's observations during the search had no weight on the CHFS worker's determination to place the child with a relative pending drug tests. Therefore, we find no error in the trial court's summary judgment on this claim.

■ The Morgans' final claim of intentional infliction of emotion distress (hereinafter "IIED") by Officer Bird is completely devoid of merit. In order to establish such a claim, the plaintiff must prove the following elements: the wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional distress and the distress suffered must be severe. *See, e.g., Craft v. Rice,* 671 S.W.2d 247 (Ky.1984); *Kroger Co. v. Willgruber,* 920 S.W.2d 61, 65 (Ky. 1996). Construing the factual allegations in favor of the Morgans and having already determined Officer Bird acted in good faith, Officer Bird's conduct does not approach the level necessary to merit a claim of IIED. Again, we agree with the trial court's grant of summary judgment on this claim.

Immunity statutes, such as KRS 620.030, were instituted by legislatures to ensure citizens will not be hesitant to report suspected abuse or neglect for fear of reprisal from upset and sometimes wrongly accused parents. The Kentucky legislature has effectuated a policy giving great value to the societal benefits of protecting children at the risk of falsely accusing the parent. If we were to allow a single disagreement between parties to be the foundation of bad faith excepting a party from immunity under KRS 620.030(1), we would be undermining the basic intent of the statute. The prompt investigation and replacement of the child at issue in the instant case was a well executed illustration of the intent and framework of KRS 620.030.

We accordingly affirm the dismissal of the claim against Gladys Bird and the summary judgment in favor of the City of Williamsburg, Kentucky, the members of the Williamsburg City Council, and Officer Bird.

ALL CONCUR.