**NORTON HOSPITALS, INC. (d/b/a Norton Suburban Hospital), Appellant,**

v.

**Brandi PEYTON, Appellee.**

**and**

**Neonatal Intensive Care Experts II, PLLC, et al., Appellants,**

v.

**Brandi Peyton, Appellee.**

Nos. 2010–SC–000818–DG, 2010–SC–000819–DG.

Supreme Court of Kentucky.

Oct. 25, 2012.

William P. Swain, Joseph M. Effinger, Patricia Colleen Le Meur, Phillips Parker Orberson & Arnett, PLC, Louisville, KY, Counsel for Appellant Norton Hospitals, Inc. (d/b/a Norton Suburban Hospital).

Beth Hendrickson McMasters, Sara Clark Davis, McMasters Keith, Inc., Louisville, KY, Counsel for Appellants Neonatal Intensive Care Experts II, PLLC and Ketan Mehta, M.D.

Jeremy Jon Nelson, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

This case interprets KRS 620.050, which provides civil and criminal immunity to the

reporters of suspected child dependency, neglect, and abuse. On the basis of that immunity, the Jefferson Circuit Court granted summary judgment in favor of Appellants Norton Hospitals, Inc. (Norton); Neonatal Intensive Care Experts II, PLLC (NICE); and Ketan Mehta, M.D. (Dr. Mehta) in a civil suit filed by Appellee Brandi Peyton (Peyton). The Court of Appeals reversed. We opine that the trial court properly applied the immunity statute where the Appellants had a good faith belief that there was "reasonable cause" to suspect child dependency, neglect, or abuse. Therefore, we reverse the Court of Appeals.

## I. Relevant Facts

On the evening of April 17, 2007, Peyton, who was nine months pregnant, was admitted to Norton for a scheduled induction to be performed the following morning. In the course of her admission, Peyton provided a medical history and completed necessary paperwork. She admitted to prior use of "Street Drugs," as indicated on her admitting record. In addition, in the "comments" section of her admitting record, a notation appeared reading, "NEEDS TOX SCREEN PER SOCIAL SERVICES...." Peyton had a history of drug use, and the Cabinet for Health and Family Services (Cabinet) had previously removed her older child from her care. However, it is undisputed that Peyton displayed no signs of intoxication upon her admission to Norton.

Norton generated a toxicology report, showing that Peyton had a blood alcohol concentration (BAC) of 0.3 milligrams per deciliter (mg/dL). Next to this result was the letter "H," which Peyton alleges meant "high."[1] For comparison, the report stated (correctly) that the Kentucky state level for intoxication is 80 mg/dL. While BAC is not an uncommon measurement, a person's blood alcohol level is more commonly understood in terms of blood alcohol percentage ("BAP" or "gm%"). Norton's report explained that to convert BAC to BAP, it is necessary to divide the BAC result by 1,000. Thus, Peyton's BAP was .0003 gm%[2]—significantly below the Kentucky state intoxication level of .08 gm%.

On April 18, 2007, Peyton gave birth to a baby boy. Dr. Mehta, the attending neonatologist on duty, authorized the reporting of Peyton's blood alcohol level to the Cabinet in terms of BAP. A Cabinet report states that it received a fax from Norton: "Laboratory–Toxicology results on [Peyton] w/ '0.3 Ethyl Alcohol level as high' on the test...." Peyton alleges that Dr. Mehta failed to perform the task of dividing her BAC by 1,000 before reporting it as her BAP. Norton alleges that Peyton's blood alcohol level was correctly reported, but misinterpreted by the Cabinet. The result was that the Cabinet believed Peyton's BAP to be 0.3 gm%—over three times the legal limit for intoxication. As a result, Peyton's son was removed from her care and has not been returned to her custody.[3]

1. Although there was no finding as to what "H" meant, it does not change the result in this case because of the good faith application.

2. Though not established by the record in this case, Peyton states that an expert witness is willing to testify that "such a miniscule amount of alcohol is present in every individual at any given time and is no indication of recent alcohol use."

3. Once the mistake was discovered, other issues prevented Peyton's son from being returned to her custody, including a meconium test that was positive for traces of marijuana. The parties dispute whether this test alone would have been sufficient to result in the child's removal.

Peyton filed suit on April 14, 2008, in Jefferson Circuit Court against Norton, Dr. Mehta, and Dr. Mehta's employer NICE, alleging medical malpractice; negligence in generating, interpreting, and reporting the toxicology report; and emotional distress, among other claims. The defendants filed motions for summary judgment, arguing that they were immune from suit pursuant to KRS 620.050(1), which grants civil and criminal immunity to anyone reporting suspected child abuse, neglect, or dependency when "acting upon reasonable cause in the making of a report or acting under KRS 620.030 to 620.050 in good faith...." The circuit court granted the defendants' motions, finding that the immunity provisions applied.

The Court of Appeals reversed, opining that a genuine issue of material fact existed as to who initiated the toxicology screening (i.e., whether it was requested by the Cabinet or initiated by Norton due to Peyton's admission of drug use), which, in its view, affected the availability of immunity under KRS 620.050(1), as well as KRS 620.050(14). This Court granted discretionary review to determine the parameters of the immunity granted by KRS 620.050.

## II. Kentucky's Mandatory Reporting and Immunity Statutes

"Recognizing the need for some type of reporting mechanism to discover instances of child abuse or neglect, all 50 states, together with the District of Columbia and the Virgin Islands, have enacted some type of statute requiring cases of child abuse to be reported to various authorities."[4] In Kentucky, the mandatory reporting statute is codified as KRS 620.030, and it requires reporting by all persons who know or have reasonable cause to believe that a child is dependent, neglected, or abused.[5]

In addition, "[t]o encourage reporting by eliminating the fear of potential lawsuits, the statutes generally grant immunity from civil or criminal liability to the person submitting the report."[6] Kentucky is no exception, and the General Assembly has granted civil and criminal immunity to anyone reporting suspected child abuse, neglect, or dependency, provided that the reporter is "acting upon reasonable cause in the making of a report or acting under KRS 620.030 to 620.050 in good faith...."[7]

## III. Summary Judgment

The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hammons v. Hammons,* 327 S.W.3d 444, 448 (Ky.2010); CR 56.03. The record must be viewed in a light most favorable to the nonmoving party and all reasonable doubts must be resolved in that party's favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991).

The decision of whether immunity applies in a given situation involves determination of the material facts; however, the question of immunity is one of law and is to be determined by the trial court.[8] In addition, "[b]ecause immunity

---

4. Danny R. Veilleux, Annotation, *Validity, Construction, and Application of State Statute Requiring Doctor or Other Person to Report Child Abuse,* 73 A.L.R.4th 782, § 2[a].

5. KRS 620.030(1).

6. Veilleux, 73 A.L.R.4th 782, § 2[a].

7. KRS 620.050(1).

8. *Energy & Environment Cabinet, Div. of Forestry v. Robinson,* 363 S.W.3d 24, 26–27 (Ky. App.2012) (citing *Rowan County v. Sloas,* 201

is designed to relieve a defendant from the burdens of litigation, it is obvious that a defendant should be able to invoke [an immunity statute] at the earliest stage of the proceeding."[9] Therefore, a motion for summary judgment is generally an appropriate method for the trial court to determine whether immunity applies. Nevertheless, even in cases involving immunity, summary judgment may not be granted unless the record contains sufficient facts to determine that the defendant was entitled to immunity as a matter of law.[10]

## IV. Immunity Under KRS 620.050(1)

■ KRS 620.030, the mandatory reporting statute, provides in relevant part:

(1) Any person who **knows or has reasonable cause to believe** that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to a local law enforcement agency or the Department of Kentucky State Police; the cabinet or its designated representative; the Commonwealth's attorney or the county attorney; by telephone or otherwise.... Nothing in this section shall relieve individuals of their obligations to report.

. . .

(5) Any person who intentionally violates the provisions of this section shall be guilty of a:

(a) Class B misdemeanor for the first offense;

(b) Class A misdemeanor for the second offense; and

(c) Class D felony for each subsequent offense.[11]

Thus, any person who *knows* or has *reasonable cause to believe* that a child is dependent, neglected, or abused, has a legal obligation to report the suspected conduct, and criminal liability attaches for an intentional failure to perform that duty.

Along with prescribing criminal penalties for a failure to report, the General Assembly has granted civil and criminal immunity to reporters. The immunity is codified in KRS 620.050(1):

Anyone **acting upon reasonable cause** in the making of a report **or acting under KRS 620.030 to 620.050 in good faith** shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceeding resulting from such report or action. However, any person who knowingly makes a false report and does so with malice shall be guilty of a Class A misdemeanor.

(Emphasis added.)

The Appellants argue that KRS 620.050(1) requires only "good faith" on the part of the reporter for immunity to apply.[12] There has been no allegation of

---

S.W.3d 469, 475 (Ky.2006); *Estate of Clark ex rel. Mitchell v. Daviess County*, 105 S.W.3d 841, 844 (Ky.App.2003)). *See also Rodgers v. Commonwealth*, 285 S.W.3d 740, 754–55 (Ky. 2009).

9. *Rodgers*, 285 S.W.3d at 755. *See also Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky.2010) (quoting *Sloas*, 201 S.W.3d at 474) ("In the context of ... immunity, '[s]ummary judgments play an especially important role,' as the defense renders one immune not just from liability, but also from suit itself.").

10. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky.2003) (mixed question of law and fact must be determined as a matter of law on motion for summary judgment).

11. Emphasis added.

12. *See Hazlett v. Evans*, 943 F.Supp. 785 (E.D.Ky.1996); *Morgan v. Bird*, 289 S.W.3d 222 (Ky.App.2009); and *Garrison v. Leahy–Auer*, 220 S.W.3d 693 (Ky.App.2006).

bad faith on the part of the Appellants. In fact, in a deposition, Peyton acknowledged that there was not bad faith involved; however, Peyton argues that, in addition to good faith, the statute requires that the reporter have "reasonable cause" to suspect dependency, neglect, or abuse. This Court has not previously addressed this issue.

"When the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written."[13] "Only if the statute is ambiguous ... or otherwise frustrates a plain reading, do we resort to the canons or rules of construction...."[14]

KRS 620.050(1) clearly states that a reporter (of dependency, neglect, or abuse) has immunity in either of two situations: where the reporter is acting upon *reasonable cause*, or where the reporter is acting *in good faith* under KRS 620.030 to 620.050. The second situation in which a reporter is granted immunity (acting in good faith under KRS 620.030 to 620.050) incorporates by reference the knowledge or reasonable cause requirement of KRS 620.030(1), but it also grants immunity where there is a *good faith belief that* the reporter knows, or a *good faith belief that*

the reporter has reasonable cause to believe that a child is dependent, neglected, or abused. Any other interpretation of the sentence would nullify the immunity granted by acting "in good faith" and render the second part of the sentence redundant. Clearly, the General Assembly did not intend on granting immunity only to take it away because that would lead to an absurdity and any interpretation that leads to an absurdity must be rejected.[15] Also, another rule of statutory interpretation requires that we attempt to harmonize all the provisions of a statute which (when applied to this statute) means that the added language was meant to add something different than simply restating the first part of the sentence.[16]

Our interpretation is also consistent with prior interpretations of "acting in good faith." Kentucky cases have found actors to be "acting in good faith" when the evidence established that they *believed* they were discharging a duty the law imposed upon them. *Roberts v. Hackney*, 109 Ky. 265, 59 S.W. 328 (1900); *Richardson v. Lawhon*, 4 Ky.L.Rptr. 998 (Ky.Super.Ct.1883). Thus, a "good faith belief" is a determination of the state of mind of the actor. *Star Bank, Kenton County, Inc. v. Parnell*, 992 S.W.2d 189 (Ky.App.1998).

**13.** *McCracken County Fiscal Ct. v. Graves*, 885 S.W.2d 307, 309 (Ky.1994) (quoting *Lincoln County Fiscal Ct. v. Dep't of Pub. Advocacy*, 794 S.W.2d 162, 163 (Ky.1990)); *see also Griffin v. City of Bowling Green*, 458 S.W.2d 456, 457 (Ky.1970).

**14.** *King Drugs, Inc. v. Commonwealth*, 250 S.W.3d 643, 645 (Ky.2008) (citing *Stephenson v. Woodward*, 182 S.W.3d 162 (Ky.2005)).

**15.** *Commonwealth v. Holidy*, 98 Ky. 616, 33 S.W. 943 (1896). This interpretation is also consistent with the important public policy served by granting immunity to reporters.

Immunity statutes, such as KRS 620.030, were instituted by legislatures to ensure cit-

izens will not be hesitant to report suspected abuse or neglect for fear of reprisal from upset and sometimes wrongly accused parents. The Kentucky legislature has effectuated a policy giving great value to the societal benefits of protecting children at the risk of falsely accusing the parent. *Morgan v. Bird*, 289 S.W.3d at 228 (Ky.App. 2009).

**16.** *Cumberland & O.R. Co. v. Barren County Court*, 73 Ky. 604 (1875); *Pendleton v. Pendleton*, 69 Ky. 469 (1869); and *Dazey v. Killam*, 62 Ky. 403 (1865).

That is to say, a reporter may be "acting under KRS 620.030 to 620.050 in good faith" if the reporter subjectively *believed* he or she was discharging the duty imposed by KRS 620.030. Therefore, a reporter's good faith belief that he or she is discharging the lawful duty to report under KRS 620.030, even if such a belief is ultimately determined to be erroneous, is all that is required under KRS 620.050(1).

 Applying the law to the case *sub judice*, the evidence reveals an obstetric admitting record which noted that Peyton was a user of "Street Drugs" and the comment "NEEDS TOX SCREEN PER SOCIAL SERVICES." Moreover, Peyton does not argue, nor does the evidence demonstrate, that the Appellants were acting in bad faith. Peyton even admitted in a deposition that she believed there was no bad faith involved. Accordingly, we conclude that the trial court did not err in finding that there was no issue of material fact as to whether the Appellants acted in good faith under KRS 620.030 in making a report to the Cabinet and were therefore entitled to immunity under KRS 620.050(1) as a matter of law.

## V. Immunity Under KRS 620.050(14)

 As to the parties' arguments regarding immunity pursuant to KRS 620.050(14), we read this subsection as applying to tests of a child and granting immunity for performing those tests unless they are negligently performed with resulting damage to the child. Accordingly, this subsection is not applicable to the case *sub judice*.

## VI. Conclusion

For the aforementioned reasons, we conclude that the trial court properly granted summary judgment in favor of the Appellants. Accordingly, the decision of the Court of Appeals is reversed and the matter remanded for proceedings consistent with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE and VENTERS, JJ., concur.

SCOTT, J., dissents by separate opinion.

SCOTT, J., dissenting:

I must respectfully dissent. The facts as developed to this early point in the litigation overwhelmingly indicate that neither the hospital nor any of its staff had reasonable cause in making the report to the Cabinet. Accordingly, I would affirm the judgment of the Court of Appeals because summary judgment was prematurely granted.

I begin, as I must, by reviewing the facts in the light most favorable to the *nonmoving party*. *Steelvest*, 807 S.W.2d at 480. When Peyton arrived at the hospital, she (1) provided a detailed medical history, and (2) read and executed all necessary admission paperwork, including a number of legal documents. A few minutes later, when she reached the obstetrics ward, Peyton provided even more detailed medical information to the nurse on duty. At no time during either of these intake interviews did any hospital staff note the appearance of intoxication in Peyton's demeanor. Nor did Peyton make any statement which would have alerted hospital staff of a situation imminently threatening the health or wellbeing of her unborn son. Indeed, she affirmatively denied any current use of drugs or alcohol.

Despite the absolute absence of any evidence of a threat to her unborn son, Dr. Mehta, the attending neonatologist on duty who *never* laid eyes on Peyton during her hospital stay, authorized reporting to the Cabinet that Peyton's blood tested for alcohol intoxicants. Dr. Mehta's report indi-

cated Peyton was almost *four times above* the legal limit for alcohol intoxication when, in fact, the results actually revealed she was *266 times below* the legal limit. Had Peyton been intoxicated to the degree reported by Dr. Mehta, it is questionable whether she would have been conscious when she entered the hospital, let alone have the wherewithal to execute legal documents and speak to two medical personnel without raising any suspicions. The Cabinet subsequently took Peyton's baby from her based on a grossly inaccurate report.

With the facts now in their proper context, I turn to the laws applicable to this case. First, KRS 620.030(1) provides:

> Any person who *knows or has reasonable cause to believe* that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to a local law enforcement agency or the Department of Kentucky State Police; the cabinet or its designated representative; the Commonwealth's attorney or the county attorney; by telephone or otherwise.... Nothing in this section shall relieve individuals of their obligations to report.

(Emphasis added.) Neither the hospital nor its staff had *any* cause, much less *reasonable* cause, to believe that Peyton's child was dependent, neglected, or abused. This being the case, there was no obligation to report the results of the toxicology screening.

Second, the immunity provision provides:

> Anyone acting upon reasonable cause in the making of a report or acting under KRS 620.030 to 620.050 in good faith shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceeding resulting from such report or action....

KRS 620.050(1). As indicated above, Dr. Mehta did not have reasonable cause (indeed, he did not have *any* cause) in making his report to the Cabinet. The majority acknowledges that KRS 620.050(1) incorporates by reference the KRS 620.030(1) reasonable cause requirement, but seems to suggest that a showing of good faith overcomes the absence of reasonable cause. I must disagree. Rather, because the potential penalty for a substantiated report is the removal of one's child from his or her custody, I believe that the General Assembly intended *both* reasonable cause and good faith to be satisfied.

The most reasonable reading of KRS 620.030(1) and 620.050(1) is that if an individual has reasonable cause to believe a child is dependent, neglected, or abused, *only then* does immunity attach, and he cannot be held liable for making a good faith, but erroneous report. Because Dr. Mehta cannot satisfy the reasonable cause requirement under the facts as developed to this point, he is not immune. Accordingly, I would affirm the judgment of the Court of Appeals and remand for further proceedings in the trial court.