v.

**Katherine BERLA, E.d.D., Appellee**

**NO. 2013-CA-001792-MR**

Court of Appeals of Kentucky.

RENDERED: FEBRUARY 6, 2015; 10:00 A.M.

process; however, as I stated, I do not believe Martin's due process rights were violated.

BRIEF FOR APPELLANT: William A. Carter, Crestwood, Kentucky

BRIEF FOR APPELLEE: Andrew D. Pellino, Louisville, Kentucky

BEFORE: ACREE, CHIEF JUDGE; J. LAMBERT AND VANMETER, JUDGES.

## OPINION

VANMETER, JUDGE:

Generally speaking, a psychologist appointed by the court to conduct a custody evaluation is immune from civil and criminal liability for verbal statements made to the Cabinet for Health and Family Services ("Cabinet") and for written statements submitted to the court through a final report. The issue presented on appeal is whether the Oldham Circuit Court erred in ruling that Katherine Berla was entitled to immunity under the facts of this case. We find that the family court did not err, and therefore affirm.

## I. Facts and Procedure

Berla was appointed by the Oldham Family Court to make an expedited, or limited custody, evaluation of A.R. ("the mother") and J.S. ("the father") to assist the family court in determining the best custody/time-sharing arrangement for the parties' minor child. Berla began by interviewing the mother. During their discussion, the mother made several allegations of concern to Berla, most significantly, that the father had unsecured firearms in his home. Other concerns included lack of appropriate food, lack of cleanliness in the home, lack of laundering of clothing, lack of appropriate bedding, and an unsecured firearm in the vehicle. After the interview with the mother, Berla contacted the Cabinet to report the information the mother had shared about the firearms.

Berla then interviewed the father. During their discussion, he stated that he had removed the unsecured firearms from his home, but still kept a gun and magazine in the center console of his vehicle. When Berla asked the father if he had ever been investigated by the Cabinet, he said no. Following their interview, Berla again contacted the Cabinet to inquire about her initial report and to also report that the father still had unsecured firearms in his possession. Berla testified that she was interested in the Cabinet's investigative report because it would be an independent evaluation of the father's home and helpful to her custody recommendation to the court.

In a later interview between Berla and the father, he expressed a desire for retribution against the mother, who he believed had reported him to the Cabinet. Berla stated she knew for a fact that the mother had not reported him. However, Berla did not tell him that she had reported him because she was uncomfortable doing so.

After meeting with other people in the child's life, observing the child interact with both parents, and gathering other information, Berla submitted her report to the family court. She recommended joint custody, with the mother to serve as primary residential parent and the father to have visitation rights. The family court ultimately adopted her recommendation. The father felt Berla's recommendation was due to her partiality towards the mother and, in an effort to prove Berla's prejudice, the father hired a different psychologist, Dr. David Feinberg, to conduct a separate evaluation. In Dr. Feinberg's report, he stated:

> Of greatest concern is the appearance of a lack of objectivity. · [Berla] seemed very sympathetic to and affirming of [the mother] and highly critical of [the father]. It was particularly concerning that she had such a negative view of [the father] that she reported him to the Cabinet as being dangerous to [the parties' minor child].

At the conclusion of the family court matter, the father filed an action in Oldham Circuit Court against Berla alleging defamation as a result of Berla's verbal report to the Cabinet and her written report to the family court. The father also averred that by reporting him to the Cabinet prior to meeting him and then by following up and "insisting" an investigation be conducted, Berla acted in bad faith, which precludes her from claiming immunity under Kentucky law. Additionally, the father alleged that by acting favorably towards the mother and prejudicially against him, Berla breached the good faith and fair dealing contractual requirement of the Uniform Commercial Code ("UCC"). In that vein, the father's argument focused on the fact that Berla conducted a full report instead of an expedited or limited report which she was originally appointed to perform.

Berla moved for judgment on the pleadings for failure to state a claim upon which relief could be granted. CR [1] 12.02, 12.03. The circuit court considered evidence outside the pleadings, thereby converting her motion into one for summary judgment. The circuit court granted Berla's motion and dismissed the father's complaint. The father now appeals.

## II. Standard of Review

Summary judgment is used to "terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr.,* 807 S.W.2d 476, 480 (Ky.1991). Whether immunity is available involves the evaluation of material facts but ultimately remains a question of law to be determined by the court. *Norton Hosps., Inc. v. Peyton,* 381 S.W.3d 286, 290 (Ky.2012). Summary judgment should be granted only when sufficient evidence of record entitles the movant to immunity as a matter of law. *Id.* at 291. Further, "[t]he question of privilege is a matter of law for the court's determination." *Rogers v. Luttrell,* 144 S.W.3d 841, 844 (Ky.App.2004) (internal quotations and citation omitted). Once a defendant asserts privilege, the plaintiff must then show privilege is either not available or has been abused. *Harstad v.*

---

1. Kentucky Rules of Civil Procedure.

*Whiteman*, 338 S.W.3d 804, 811 (Ky.App. 2011). While a jury normally determines if a privilege has been abused, if no facts of record show malice, summary judgment may be appropriate. *Id.*

### III. Analysis

The father asserts three claims of error with respect to the circuit court's grant of summary judgment: 1) Berla did not have a good faith basis for her verbal comments to the Cabinet, and therefore statutory immunity did not apply; 2) Berla was not entitled to assert the judicial proceedings privilege; and 3) Berla breached her contractual obligation of good faith and fair dealing by becoming an advocate for the mother, thereby intentionally and without cause interfering with the father's custody of his child. While both slander and libel are alleged by the father, the distinction is not pertinent in this case since if immunity and privilege are available to Berla, she is protected from any civil or criminal liability. These issues will be addressed in turn.

### A. Immunity for Verbal Report to the Cabinet.

██ In an effort to thwart child abuse, Kentucky, like other states, has enacted mandatory reporting statutes. KRS[2] 620.030(1) requires:

> Any person who **knows or has reasonable cause to believe** that a child is dependent, neglected, or abused **shall immediately** cause an oral or written report to be made to a local law enforcement agency or the Department of Kentucky State Police; the cabinet or its designated representative; the Commonwealth's attorney or the county attorney; by telephone or otherwise.

(emphasis added). To encourage fulfillment of this duty to report, immunity from any criminal or civil liability which might

incur is available for those who report instances of suspected child abuse, neglect, or dependency. KRS 620.050(1) provides:

> Anyone acting upon **reasonable cause** in the making of a report **or acting under KRS 620.030 to 620.050 in good faith** shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed. Any such participant shall have the same immunity with respect to participation in any judicial proceeding resulting from such report or action. However, any person who knowingly makes a false report and does so with malice shall be guilty of a Class A misdemeanor.

(emphasis added).

██ "Good faith" is subjective; it "is a determination of the state of mind of the actor." *Norton Hosps.*, 381 S.W.3d at 292. Kentucky cases have held that reporters are "acting in good faith" when they subjectively believe they are discharging a duty imposed on them by law. *Id.* at 293. "[A] reporter's good faith belief that he or she is discharging the lawful duty to report under KRS 620.030, even if such a belief is ultimately determined to be erroneous, is all that is required under KRS 620.050(1)." *Id.* Absent sufficient evidence of bad faith, a reporter is afforded immunity. *Morgan v. Bird*, 289 S.W.3d 222, 226–27 (Ky.App.2009) (holding that reporter is entitled to immunity absent proof report was made with bad intent or knowing the information to be false). Without evidence of bad faith on Berla's part or evidence that Berla did not subjectively believe she was discharging her lawful duty to report, she is entitled to immunity under KRS 620.050(1).

Berla testified that the mother's expression of concern for her child while in the

---

2. Kentucky Revised Statutes.

care of the father convinced Berla, subjectively, that she had a duty to report. Unbeknownst to Berla, the firearm issue had previously been brought to the Cabinet's attention before she reported it. Nevertheless, the circuit court found that Berla did not know the firearm issue had been previously addressed and, therefore, she was not knowingly making a false or inaccurate report. With regards to the fact that Berla made her report to the Cabinet prior to meeting the father, KRS 620.030(1) requires one to "immediately" report instances of child abuse, neglect, or dependency; failing to do so can result in criminal liability. Thus, Berla was within bounds to report to the Cabinet based on the information provided by the mother. Furthermore, Berla's follow-up call to the Cabinet after her initial report was not to force an investigation of the father, as he claims; rather, it was to authenticate his answer as to whether he had ever been investigated by the Cabinet, as well as to obtain a copy of its investigative report for purposes of her custody recommendation.

In sum, Berla subjectively believed she was required, by law, to report to the Cabinet the information she received from the mother. Indeed, legally, she was required to do so immediately upon learning this information. In reporting to the Cabinet, Berla believed she was discharging her lawful duty. The father has not provided sufficient evidence to prove Berla was not acting in good faith or was acting with knowledge of the information's falsity. Absent this proof, Berla is entitled to immunity from civil or criminal liability, as provided by KRS 620.050(1).

B. Immunity for Custodial Evaluation Report.

The second defamation claim concerns Berla's written report submitted to the Oldham Family Court. The father alleges that Berla exceeded the scope of her appointment by completing a full report, instead of a limited or expedited report she was ordered to perform; she did so in bad faith by being partial towards the mother; and therefore she is not entitled to immunity or to the privilege she asserts. We disagree.

Kentucky case law makes clear that a court-appointed psychologist is given quasi-judicial immunity in order to complete the job effectively. *See Stone v. Glass*, 35 S.W.3d 827, 830 (Ky.App.2000) (holding that a court-appointed psychologist was entitled to quasi-judicial immunity because her job as custodial evaluator required her to act as a fact-finder for the court as an integral part of the judicial process). In *Stone*, the Court considered conflicting holdings from other states, but ultimately decided sound policy weighed in favor of immunity:

> First, if these individuals are subject to suit, they will be much less willing to serve the court in such a capacity. Second, a psychologist who agrees to fill the role of court-appointed evaluator will be less likely to offer the disinterested, objective opinion the court seeks in making such an appointment if he or she is subject to suit. In light of the foregoing, we conclude that the functions served by court-appointed psychologists conducting evaluations and making recommendations regarding custody are integral to the judicial process. Therefore, such individuals are entitled to quasi-judicial immunity.

*Id.* at 830 (internal quotations and citation omitted). Here, Berla acted as a fact-finder for the court in providing a snapshot of the parents' lives, along with recommendations for time-sharing. In order to perform this task effectively, the law affords Berla the same discretion a judge and jury are given during a trial. This

discretion is appropriate considering Berla's function as an integral part of the judicial process.

 Further supporting Berla's claim to immunity for her comments contained in her final written report is the applicability of the judicial proceedings privilege. This privilege, as outlined in *Rogers*, 144 S.W.3d 841, requires:

First, the occasion of the communication must be examined to determine if the statement was made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding." Second, a court must evaluate the content of the statement to determine if it "has some relation to a proceeding that is contemplated in good faith and under serious consideration."

*Id.* at 843–44 (quoting *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir.1990)).

As to the first prong, Berla conducted this evaluation at the behest of the court for its use in devising a time-sharing schedule. Berla's comments were made during the course of and as part of the judicial proceeding. Second, Berla's statements were relevant to the custody proceeding; her report contained her methods for obtaining the information and explained her recommendation. Berla testified that she remained objective and neutral during the course of this proceeding, and that she had similarly reported parties in prior cases to the Cabinet without it

affecting her professional objectivity. Finally, while Dr. Feinberg questioned Berla's objectivity, his recommendations and conclusions were not so vastly different from Berla's so as to allow an implication of bad faith or partiality on Berla's part.

C. Breach of Contract.

 The father's last claim is for breach of contract.[3] The father cites to KRS 355.1–304, which states that "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." The problem with the father's argument is that he ignores an earlier section within KRS Chapter 355, Article 1: "This article [Uniform Commercial Code—General Provisions] applies to a transaction to the extent that it is governed by another article of the Uniform Commercial Code." KRS 355.1–102. Berla's court-appointed task is not one that falls under the authority of the UCC. Furthermore, this section has been held not to create an independent cause of action for breach of good faith. *Peacock v. Damon Corp.*, 458 F.Supp.2d 411, 419 (W.D.Ky.2006) (applying Kentucky law). Similarly, while Kentucky common law recognizes the obligation of good faith performance in every contract, violation of the good faith covenant alone does not give rise to an independent cause of action. *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F.Supp.2d 629, 634 (E.D.Ky.2012) (recognizing that "Kentucky law does not

**3.** The father claims Berla became an advocate for the mother and that Berla intentionally and without cause interfered with his custody of his child. However, regardless of the recommendations in the report, the father's custody was going to be affected, either in his favor or not in his favor. Simply because the report did not comport with his concept of fairness does not mean Berla was an advocate for the other party, nor does it mean that she acted in bad faith in performing her duties. Her recommendations were not immediately binding; they were merely recommendations from a neutral qualified party for the court to consider. Thus, in failing to identify a specific breach of the contract, the father fails to state a claim upon which relief can be granted.

recognize an independent tort for breach of good faith and fair dealing outside of insurance contracts[ ]").

## IV. Conclusion

We conclude that the circuit court did not err in granting summary judgment in favor of Berla and in dismissing the fa-ther's claims. The Oldham Circuit Court's order is affirmed.

ALL CONCUR.