OPINION OF THE COURT BY JUSTICE WRIGHT
Appellant, the Presbyterian Church, appeals from the Court of Appeals' order granting in part and denying in part its petition for a writ to prohibit the trial court from lifting its stay of discovery. The Court of Appeals granted the writ to the extent the trial court should limit discovery to that which was necessary to determine whether the church was entitled to ecclesiastical immunity. For the following reasons, we affirm the Court of Appeals' order.
I. BACKGROUND
The Presbyterian Ministry Agency (PMA) hired Reverend Eric Hoey as the Director of Evangelism and Church Growth. During his tenure in that position, Hoey acted with other ministers to incorporate an entity separate and apart from the church. Church funds were transferred to the newly-created entity without authorization. The church issued a written warning to Hoey regarding his actions. This warning included findings that Hoey failed to properly manage ministers under his supervision, failed to timely inform his supervisors that he incorporated the entity without authorization, and that Hoey contributed to a culture of non-compliance with PMA and church policies.
The church reported the disciplinary action to Hoey's Presbytery. That notification indicated that Hoey had known about the incorporation and approved a transfer of grant money without ensuring that the church's incorporation criteria were followed. The notification made it clear, however, that Hoey never intended to personally benefit from the funds and that all grant funds were returned. In addition to this disclosure made to the Presbytery, the church also released general information about the incorporation and dissolution of the entity to the denomination.
The church placed Hoey on paid administrative leave for more than six months before terminating his employment. After his termination, Hoey filed a complaint in Jefferson Circuit Court alleging the church defamed him by reporting to independent Presbyterian news agencies and other third parties that he had "committed ethical violations." The church filed a motion for summary judgment. Hoey did not respond to that motion, but, instead, served the church discovery requests.
At a status hearing, the church argued to the trial court that Hoey should not be entitled to discovery until the court ruled on its ecclesiastical-abstention and ministerial-exception defenses. The trial court disagreed with the church and ordered it to respond to Hoey's discovery requests within twenty days.
Following the trial court's discovery ruling, the church petitioned the Court of Appeals for a writ, arguing the trial court had essentially abrogated its immunity by forcing it to participate in discovery without *178 first making a threshold immunity determination. The church also asked the Court of Appeals to consider (for the first time) the issue of its immunity and to dismiss the underlying action on those grounds. The Court of Appeals granted the writ in part, holding the trial court had abused its discretion in allowing broad-reaching discovery, but denied the writ insofar as it would allow discovery related to the immunity issue. The Court of Appeals did not rule on the immunity issue. The church appeals, arguing the Court of Appeals' order did not go far enough. We disagree.
II. ANALYSIS
The issuance of a writ is an extraordinary remedy, and we have always been cautious and conservative in granting such relief. Grange Mut. Ins. v. Trude, 151 S.W.3d 803, 808 (Ky. 2004). The standard for granting petitions for writs of prohibition and mandamus is the same. Mahoney v. McDonald-Burkman, 320 S.W.3d 75, 77 n.2 (Ky. 2010) (citing Martin v. Admin. Office of Courts, 107 S.W.3d 212, 214 (Ky. 2003) ). This Court set forth that standard in Hoskins v. Maricle :
A writ ... may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.
150 S.W.3d 1, 10 (Ky. 2004). Here, there is no argument that the lower court lacked jurisdiction. Therefore, this case falls under the second class of writ, which requires that there be (1) no adequate remedy by appeal and (2) great injustice and irreparable injury.
In the present case, the church has satisfied the initial requirement of no adequate remedy by appeal, as "[o]nce the information is furnished it cannot be recalled." Bender v. Eaton, 343 S.W.2d 799, 802 (Ky. 1961). However, the church falls short of meeting the "great and irreparable injury" prong of that test. In Bender, our predecessor court stated:
Compelling a party, in advance of trial, to produce for the benefit of his adversary information or evidence, even assuming he should not be required to produce it under the Rules, probably would not constitute 'great and irreparable injury' within the meaning of that phrase." However, ... in a certain class of cases, of which this is one, the showing of such grievous injury is not an absolute necessity.... [I]f an erroneous order results in a substantial miscarriage of justice and the orderly administration of our Civil Rules necessitates an expression of our views, we may, and in the proper case should, decide the issue presented.
Id. "This Court has consistently recognized an exception to the irreparable harm requirement in 'certain special cases." ' Ridgeway Nursing & Rehab. Facility, LLC v. Lane, 415 S.W.3d 635, 639-40 (Ky. 2013). In such cases, this Court will entertain the petition "provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." Bender, 343 S.W.2d at 801. We review writs under the "certain special cases" exception de novo. Grange, 151 S.W.3d at 810.
With that precedent in mind, we will determine if a substantial miscarriage of justice will result if the trial court's *179 ruling regarding discovery is erroneous and if the correction of that error is necessary to the orderly administration of justice.
In St. Joseph Catholic Orphan Soc'y v. Edwards, we examined the ecclesiastical-abstention defense; there, we held:
Like other affirmative defenses recognized by this Commonwealth, ecclesiastical abstention operates in confession and avoidance, meaning that even assuming the plaintiffs allegations to be true, he is nonetheless not entitled to recover. So, ... we draw an analogy to perhaps the most commonly encountered defense of confession and avoidance, qualified governmental immunity, and aver that the ecclesiastical-abstention defense is to be applied in a manner that is procedurally consistent with the application of qualified governmental immunity.
449 S.W.3d 727, 737 (Ky. 2014). Here, the trial court would have allowed broad discovery regarding the underlying merits of the case before making a ruling as to the church's immunity. However, "[i]mmunity from suit includes protection against the 'cost of trial' and the 'burdens of broad-reaching discovery'...." Lexington-Fayette Urban Cty. Gov't v. Smolcic, 142 S.W.3d 128, 135 (Ky. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). A party entitled to immunity is immune not only from liability, but also "from the burdens of defending the action." Rowan Cty. v. Sloas, 201 S.W.3d 469, 474 (Ky. 2006).
Because the church should not be subjected to the broad-reaching discovery allowed under the trial court's order prior to an immunity determination, we affirm the Court of Appeals' denial of discovery which does not pertain to the issue of the church's immunity. "Because immunity is designed to relieve a defendant from the burdens of litigation, it is obvious that a defendant should be able to invoke [it] at the earliest stage of the proceeding.... [O]nce the defendant raises the immunity bar by motion, the court must proceed expeditiously." Rodgers v. Commonwealth, 285 S.W.3d 740, 755 (Ky. 2009). To allow such broad discovery before the trial court rules on the church's immunity would result in "a substantial miscarriage of justice ... if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." Bender, 343 S.W.2d at 801. This is simply not the manner in which an immunity case should proceed. If immune, the church should not be subject to the burdens of defending Hoey's defamation action.
However, denying such broad discovery as to the issues underlying the merits of Hoey's defamation claim does not foreclose all discovery in this matter. The trial court's continuation with discovery regarding the church's immunity would neither amount to a substantial miscarriage of justice nor fly in the face of orderly judicial administration. The immunity issue is squarely before the trial court and we will not hinder the parties' access to discovery materials pertaining to that narrow issue. The trial court will be in the best position to control the flow of discovery. In Kirby v. Lexington Theological Seminary, we acknowledged that "excessive entanglement [with church doctrine] may be a real possibility during the litigation but ... the trial judge has adequate discretion to control discovery and the flow of evidence so that if ecclesiastical matters overtake the litigation, the case can be stopped on summary judgment or simply dismissed." 426 S.W.3d 597, 619 (Ky. 2014). We do not believe very limited discovery concerning only the issue of immunity merits the extraordinary remedy of a writ. After all, our *180 case law has made it clear: "[e]xtraordinary writs are disfavored...." Buckley v. Wilson, 177 S.W.3d 778, 780 (Ky. 2005).
The church also asks this Court to take up the issue of the church's immunity at this juncture.[1] We decline to do so. We have held, "[t]he decision of whether immunity applies in a given situation involves the determination of the material facts; however, the question of immunity is one of law and is to be determined by the trial court." Norton Hosps., Inc. v. Peyton, 381 S.W.3d 286, 290 (Ky. 2012). Once the trial court rules on the church's immunity, we note that "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." Breathitt Cty. Bd. of Educ. v. Prater, 292 S.W.3d 883, 887 (Ky. 2009). That is the proper avenue for this case to proceed. We see no need in this matter to open this Court to an issue not yet ripe for our review (and, indeed, one that may never become ripe for our review depending on the proceedings below).
The dissent would dismiss the underlying defamation claim on grounds of immunity. However, as noted above, this is a determination for the trial court-and we should not invade that court's province. Ultimately, this case hinges on whether the lofty writ standard is met. Here, no substantial miscarriage of justice will result even assuming the trial court's ruling regarding narrow discovery relating only to the issue of immunity is erroneous. If the trial court determines that the church is immune, the inquiry need go no further. If that court determines it is not, that decision is immediately appealable. This simply does not rise to the high level necessary for this Court to grant an extraordinary writ. If the lower court proceeds *181 erroneously, there is an adequate remedy by appeal. This case could follow the normal avenues of appeal without this Court accepting an ordinary immunity ruling as grounds for an extraordinary writ and throwing open the floodgates for such motions. This Court has provided the proper avenue for such a determination-and that is the manner in which the case should proceed.
III. CONCLUSION
We hold that the church satisfied the "certain special cases" writ criteria as to broad-reaching discovery. However, it failed to meet this lofty standard as to limited discovery the trial court may deem necessary in order to determine whether the church is immune from the present suit. Therefore, if it deems necessary, the trial court should allow that limited discovery to proceed and rule on the issue of immunity expeditiously. The case should not proceed-whether with additional discovery (apart from that the trial court deems necessary in making the immunity determination) or otherwise-until the trial court rules on the threshold immunity issue. This Court declines the church's request to determine the issue of immunity. Therefore, we affirm the Court of Appeals' judgment. The case underlying this writ action should proceed in the trial court consistent with this opinion.
All sitting. Minton, C.J., Hughes, and Keller, JJ., concur. Venters, J., dissents by separate opinion which Cunningham and VanMeter, JJ., join.

The dissent would dismiss the underlying defamation claim on grounds of immunity. However, as noted above, this is a determination for the trial court. When addressing this issue, the trial court will need to determine whether Hoey's actions in approving a transfer of grant money without ensuring that the church's incorporation criteria were followed raised an issue of ecclesiastical doctrine (thus giving rise to immunity) or if they amounted to a mere failure to follow organizational procedures. The dissent would require that any action of a religious organization would be beyond judicial review without any discovery to determine whether that action was based upon ecclesiastical doctrine. As we have held:
the ecclesiastical abstention doctrine is primarily interested in preventing any chilling effect on church practices as a result of government intrusion in the form of secular courts. But when the case merely involves a church, or even a minister, but does not require the interpretation of actual church doctrine, courts need not invoke the ecclesiastical abstention doctrine. No entanglement concern arises as a result of the mere reference of religion.
Kirby, 426 S.W.3d at 619. That is the issue here to be determined by the trial court-and the reason we hold this case should not end at this juncture.
Furthermore, the dissent asserts "[i]t is absurd to hold that the Church could not be sued for firing Hoey because it falsely found him in violation of Presbyterian ethical policy, while inconsistently holding that the Church can be sued for falsely saying he was fired for violating Presbyterian ethical policy." There are two problems with this position. First, discovery has not been held in this case to determine whether Hoey's actions were a violation of church doctrine or were merely a procedural mistake. Second, there is a vast difference between holding that the relationship between a minister and his congregation requires such a degree of confidence that he must be considered an at-will employee versus considering a defamation claim regarding a written publication stating that the minister acted unethically. The firing would be based upon a problem with the relationship between the minister and his congregation, whereas the written publication of the statement that the minister was unethical could destroy the minister's relationship with the public at large.