RENDERED:  JUNE 6, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1085-MR

VIDIONIX LLC     APPELLANT

     APPEAL FROM JEFFERSON CIRCUIT COURT
v.      HONORABLE ERIC JOSEPH HANER, JUDGE
     ACTION NO. 24-CI-001779

HUMANA INC.     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND L. JONES, JUDGES.

COMBS, JUDGE:  Vidionix, LLC, appeals an order of the Jefferson Circuit Court dismissing its lawsuit for breach of contract action against Humana, Inc.  Vidionix contends that the trial court erred by concluding that Vidionix failed to state a claim against Humana upon which relief could be granted.  After our review, we affirm.

Vidionix is a company providing original video content to its commercial clients. Vidionix and Humana had a long-standing business relationship when, on April 1, 2023, they entered into a written contract entitled "Master Business Agreement." In accordance with Article 23, and pursuant to an attachment to the contract, Humana agreed to provide Vidionix a yearly "guaranteed spend," which would increase and compound annually, in exchange for Vidionix's agreement to pay a tiered rebate annually, which would increase and compound at the same rate as the guaranteed spend. The attachment featured tables calculating these expanding sums over a projected four-year period ("the guaranteed spend and rebate tables").

The agreement also included a broad array of provisions governing Vidionix's operations. The agreement required Vidionix to impose upon its employees and subcontractors obligations to preserve the confidentiality of Humana's clients, subscribers, and enrollees -- as well as provisions requiring Vidionix to enforce those obligations. Vidionix agreed to perform extensive background checks on its employees and to enforce a policy of unacceptable behavior against them that addressed the use of alcohol, illegal substances, and misuse of prescription medications. The agreement prohibited Vidionix from performing or subcontracting any service to any offshore location or companies without Humana's express written consent. The agreement directed that Vidionix

-2-

would receive Humana's purchase orders only through Humana's online self-service portal and that Vidionix would create and submit electronic invoices to Humana using the same portal. The agreement also provided that Humana could inspect Vidionix's facilities, systems, processes, books, and records upon reasonable notice, that Vidionix would cooperate fully with Humana's audit staff, and that it would correct deficiencies identified by Humana. Vidionix agreed to maintain complete and accurate payroll records, attendance cards, and job summaries for a minimum of six years and to permit Humana to audit those records for accuracy.

Vidionix agreed to indemnify Humana against all liabilities (including attorney fees) of any kind arising out of a claim against Humana for any patent, copyright, or trademark infringement or a claim against Humana for any breach of the parties' HIPAA[1] Business Associate Agreement. In addition, Vidionix agreed to indemnify Humana against any claim asserted against Humana for violation for any applicable law, order, or regulation. Vidionix agreed to keep confidential an extensive list of Humana's business activities and information related to its clients, members, and enrollees; information related to its computer systems; and information related to its research and development activities. Finally, Vidionix

---

[1] Health Insurance Portability and Accountability Act.

was required to maintain a wide variety of insurance coverages to protect Humana's interests.

Article 8 of the parties' agreement provided that the agreement would begin on the date of execution and would continue "in full force and effect thereafter until March 31, 2026, *unless earlier terminated in accordance with the provisions of this agreement.*" (Emphasis added.) Among a myriad of other reasons, Article 9.1 provided that the contract could be terminated at Humana's mere **convenience**. With respect to a termination at Humana's convenience, the parties specifically agreed as follows:

> Notwithstanding any other provisions of this Agreement to the contrary, [Humana] may unilaterally terminate this Agreement, without cause, by giving [Vidionix] prior written notice of its election to terminate. Upon notice, [Humana's] financial obligations to [Vidionix] under this agreement will be limited to fees due and payable pursuant to each Schedule or SOW [statement of work], provided that fees will be limited to fees for products, services, and deliverables accepted by [Humana] before the effective date of such termination.

Vidionix provided all services requested by Humana under the terms of the agreement in a timely manner and otherwise complied with the agreement's provisions. Nevertheless, approximately six months after the agreement was executed, Humana contacted Vidionix with a proposal to amend the agreement by eliminating the guaranteed spend and rebate attachment. Vidionix declined. Thereafter, Humana notified Vidionix of its intention to terminate the agreement

for convenience pursuant to Article 9.1. It did so by way of written notice indicating that the contract would terminate as of December 28, 2023.

Based upon Humana's termination of the parties' agreement, Vidionix filed a breach-of-contract action against Humana in Jefferson Circuit Court on March 13, 2024. Pursuant to Kentucky Rules of Civil Procedure (CR) 12.02 and in lieu of an answer, Humana filed a motion to dismiss for failure to state a claim upon which relief can be granted. In an order entered June 21, 2024, the circuit court granted Humana's motion to dismiss. The court concluded that it could find no ambiguity in the agreement's provisions and that Humana was clearly entitled to terminate the contract **at its convenience** prior to the expiration of the agreement's projected term. It observed as follows:

> Contrary to Vidionix's assertions, Section 9.1 does not conflict with and is not superseded by any other provision of the Agreement. With respect to this issue Vidionix points to an attachment to the Agreement setting forth Humana's obligation to provide a "guaranteed spend" and Vidionix's reciprocal obligation to provide rebates during the calendar years of 2023 through 2026 (the "Guaranteed Spend & Rebate Attachment). Vidionix also points to Article 21 of the Agreement, which states that "[i]n the event of any conflict between the terms and conditions of this Agreement and the terms and conditions of any attachment, Schedule, SOW, addenda or amendment, *the terms of the attachment, Schedule, SOW, addenda or amendment will govern*." (emphasis added). The problem for Vidionix is that the Guaranteed Spend & Rebate Attachment does not contain any language related to the term or termination of the Agreement that is in

conflict with Section 9.1.  The Guaranteed Spend & Rebate Attachment, for example, does not purport to limit Humana's right to terminate the Agreement unilaterally for convenience or to make Humana liable for its minimum guaranteed spend in future years even in the event of termination, both of which would conflict with Section 9.1.  In the absence of any conflict, Article 21 does not provide for Humana's financial obligations under the Guaranteed Spend & Attachment (sic) to supersede its right under Section 9.1 to terminate the Agreement unilaterally for convenience.

(Citations omitted.)  The circuit court denied Vidionix's motion to alter, amend, or vacate the dismissal.  This appeal followed.

When the trial court considers a motion to dismiss pursuant to CR 12.02(f), it must take the allegations included in the plaintiff's complaint as true. *Marshall v. Marshall*, 559 S.W.3d 381, 383 (Ky. App. 2018) (citing *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009)).  The court grants the motion where it appears that the plaintiff would not be entitled to relief under **any set of facts** which could be proven in support of the claim.  CR 12.02(f).  The question presented is resolved by the trial court with reference only to principles of law without a determination of any fact.  *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002).  Consequently, our review is conducted *de novo.  Sholar v. Turner*, 664 S.W.3d 719, 722 (Ky. App. 2023).

On appeal, Vidionix argues that the circuit court erred by disregarding a conflict between competing provisions of the parties' agreement or, in the

alternative, by ignoring an ambiguity in the terms of the agreement. Vidionix contends that it is unclear from the language of the contract what the parties intended. It submits that the contract could be read *either* to be an "at will" agreement terminable at Humana's convenience *or* an agreement for a term of four years as forecasted by the "guaranteed spend and rebate tables" appended to the agreement. As the agreement cannot be both, Vidionix contends that the parties' intentions are not discernable. In the alternative, Vidionix argues that where the provisions are in conflict, the four-year term forecasted by the "guaranteed spend and rebate tables" supersedes the provision affording Humana an opportunity to terminate the agreement at its convenience. In support of its position, Vidionix relies on the following language from the contract:

> In the event of any conflict between the terms and conditions of this Agreement and the terms and conditions of any attachment, Schedule, SOW, addenda, or amendment, **the terms of the attachment, Schedule, SOW, addenda, or amendment will govern**.

(Emphasis added.)

Both arguments asserted by Vidionix are answered by integrating the agreements provisions and reading the contract as a whole. Again, Article 8 provided that the agreement would begin on the date of execution and would continue "in full force and effect thereafter until March 31, 2026, *unless earlier terminated in accordance with the provisions of this agreement*." (Emphasis

-7-

added.) The "guaranteed spend and rebate tables" were specifically incorporated into the agreement and are governed thereby. Article 9.1 unambiguously provided that the contract could be terminated at Humana's mere **convenience**. Moreover, with respect to a termination at Humana's convenience, the parties agreed that despite "any other provisions of this Agreement to the contrary, [Humana] may unilaterally terminate this Agreement, without cause. . . ." Therefore, were Humana to elect to terminate the agreement, the parties' reciprocal obligations as envisioned by the "guaranteed spend and rebate tables" would also necessarily end. The "guaranteed spend and rebate tables" were to set to operate **only** during the term of the parties' agreement. And Article 9 specifically preserved Humana's right to terminate the entire arrangement at its convenience simply upon written notice. By these terms, Vidionix had no reason to expect the contract to govern the parties' reciprocal financial obligations beyond Humana's election to terminate the agreement -- **at any time and with or without any cause to do so**.

This understanding of the parties' agreement gives effect to the plain language of the terms they used to implement it. The provisions of the agreement are not ambiguous; they are not in conflict. Because there is no breach or no actionable conduct, the trial court did not err by dismissing Vidionix's action against Humana.

We affirm the order of the Jefferson Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Gregory L. Taylor
Tyler J. Rucker
Louisville, Kentucky

BRIEF FOR APPELLEE:

Phillip M. Longmeyer
R. Brooks Herrick
Annie S. Myers
Hannah D. Thompson
Louisville, Kentucky